

**NUMBERS
13-10-00401-CV
13-10-00402-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **TEXAS DEPARTMENT OF PUBLIC SAFETY,** | **Appellant,** |
| **v.** | |
| **ROBERT A. SPARKS,** | **Appellee.** |

**On appeal from the 267th District Court
of Victoria County, Texas.**

# OPINION

**Before Justices Garza, Benavides and Vela
Memorandum Opinion by Justice Garza**

Appellant, the Texas Department of Public Safety ("DPS"), brings this

interlocutory appeal from the trial court's orders denying its plea to the jurisdiction and

motion for summary judgment.[1]  We reverse and render judgment dismissing the claims against DPS for lack of subject matter jurisdiction.

## I. BACKGROUND

On the afternoon of April 7, 2004, DPS Troopers Shawn Hallett and Corey Lee responded to a radio alert that Trooper Cole Dunaway was pursuing a motorcycle that had been speeding and was driving recklessly in Victoria, Texas.  With emergency lights and siren activated, Hallett and Lee joined the pursuit and eventually took the lead.  Attempting to prevent the motorcycle from turning toward a school zone, Hallett, who was driving, entered an intersection against a red light and collided with a van driven by appellee, Robert Sparks.

Sparks sued DPS for damages arising from the negligent operation of a motor vehicle under the Texas Tort Claims Act ("the Act").  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109 (West 2011).  DPS answered and filed a plea to the jurisdiction and motion for summary judgment, in which it argued:  (1) the affirmative defense of sovereign immunity arising from the official immunity of Hallett; (2) that the Act's limited waiver of sovereign immunity does not apply to Sparks's claim because Hallett was responding to an emergency at the time of the accident, *see id.* § 101.055(2); and (3) there is no evidence that Hallett proximately caused the accident.[2]  Sparks filed responses to the plea to the jurisdiction and motion.  Following a hearing on June 14, 2010, the trial court denied DPS's plea and motion.  This appeal followed.

---

[1] In appellate cause number 13-10-00401-CV, DPS appeals the denial of its plea to the jurisdiction, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2008), and in appellate cause number 13-10-00402-CV, it appeals the denial of its motion for summary judgment, *see id.* § 51.014(a)(5).

[2] In its plea to the jurisdiction, DPS asserted only the second ground—that it retains its sovereign immunity because of the statutory exception governing emergency situations.  *See id.* § 101.055(2) (West 2011).  DPS makes the same argument in its motion for summary judgment; the plea to the jurisdiction incorporates all of the summary judgment evidence.

2

## II.  STANDARDS OF REVIEW AND APPLICABLE LAW

### A.  Plea to the Jurisdiction

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).  The plea challenges the trial court's jurisdiction over the subject matter of a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Parks & Wildlife Dep't v. Morris*, 129 S.W.3d 804, 807 (Tex. App.—Corpus Christi 2004, no pet.).  Subject matter jurisdiction is a question of law; therefore, an appellate court reviews de novo a trial court's ruling on a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 226; *Morris*, 129 S.W.3d at 807.

Because immunity from suit defeats a trial court's subject-matter jurisdiction, it may be properly asserted in a jurisdictional plea. *Miranda*, 133 S.W.3d at 225-26.  In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003).  We assume the truth of the jurisdictional facts alleged in the pleadings unless the defendant presents evidence to negate their existence. *Miranda*, 133 S.W.3d at 226–27.  If a plea to the jurisdiction challenges the jurisdictional facts, we consider relevant evidence submitted by the parties to resolve the jurisdictional issues raised. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2008) (citing *Miranda*, 133 S.W.3d at 227); *see Bland Indep. Sch. Dist.*, 34 S.W.3d at 555.  If that evidence creates a fact issue as to jurisdiction, then it is for the fact-finder to decide. *City of Waco*, 298 S.W.3d at 622; *Miranda*, 133 S.W.3d at 227-28.  "However, if

the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Miranda*, 133 S.W.3d at 228. After the defendant "asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Id.* This standard "generally mirrors" that of a traditional motion for summary judgment. *Id.* When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the non-movant. *Id.*; *see County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). We do not "weigh the claims' merits but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry." *Brown*, 80 S.W.3d at 555.

## B. Emergency Exception

The Texas Tort Claims Act waives immunity from liability and suit in a number of circumstances. *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 410 (Tex. App.—Fort Worth 2006, pet. denied). But the Act includes a subchapter entitled "Exclusions and Exceptions," listing circumstances in which its waiver-of-immunity provisions do not apply. *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.051–067 (West 2011); *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672–73 (Tex. 2006)). Among those is section 101.055(2), which governs emergency situations:

This chapter [Texas Tort Claims Act] does not apply to a claim arising:

. . . .

4

(2) from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others . . . .

TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2) (West 2011).

The law applicable to emergency action in this context is section 546.005 of the Texas Transportation Code, which provides that the driver of an emergency vehicle must drive "with appropriate regard for the safety of all persons," and he is not relieved of "the consequences of reckless disregard for the safety of others." TEX. TRANSP. CODE ANN. § 546.005 (West 1999). The Texas Supreme Court held that this provision "imposes a *duty* to drive with due regard for others by avoiding negligent behavior, but it only imposes *liability* for reckless conduct." *City of Amarillo v. Martin*, 971 S.W.2d 426, 431 (Tex. 1998) (interpreting the uncodified predecessor of section 546.005).

> The supreme court has stated that the "reckless disregard" test "requires a showing of more than a momentary judgment lapse" and that "[t]o recover damages resulting from the emergency operation of an emergency vehicle, a plaintiff must show that the operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury." *City of Amarillo v. Martin*, 971 S.W.2d 426, 429–30 (Tex. 1998). More recently, the Texas Supreme Court has stated that the terms "conscious indifference" and "reckless disregard" "require proof that a party knew the relevant facts but did not care about the result." [*City of San Antonio v.*] *Hartman*, 201 S.W.3d [667], 672 n.19 [(Tex. 2006)].

*City of Pasadena v. Kuhn*, 260 S.W.3d 93, 99 (Tex. App.—Houston [1st Dist.] 2008, no pet.). "Thus, a governmental entity is immune from suits to recover damages resulting from the emergency operation of an emergency vehicle unless the operator acted recklessly; that is, 'committed an act that the operator knew or should have known

5

posed a high degree of risk of serious injury.'" *Smith v. Janda*, 126 S.W.3d 543, 545 (Tex. App.—San Antonio 2003, no pet.) (quoting *Martin*, 971 S.W.2d at 430).

The transportation code provides that, in operating an authorized emergency vehicle, a state employee may proceed past a red light after slowing as necessary for safe operation. TEX. TRANSP. CODE ANN. § 546.001(2) (West 1999). Moreover, the operator must use, at his discretion and in compliance with local government or department policy, appropriate audible or visual signals. *Id.* § 546.003.

In addition, section 545.156 of the transportation code provides that, on the immediate approach of a police vehicle using an audible signal, an operator, unless otherwise directed by a police officer, shall yield the right-of-way, immediately pull over to the right-hand curb of the roadway clear of any intersection, and stop until the emergency or police vehicle has passed. *See id.* § 545.156.

### III. DISCUSSION

In its plea to the jurisdiction, DPS asserted that it retained its sovereign immunity pursuant to the "emergency exception" to the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2). Evidence submitted by DPS included: (1) DPS's accident report and other related documents, including Hallett's report to his then-supervisor, Sergeant Glen Garrett, and another report to Garrett submitted by Trooper Jason Price; (2) Hallett's affidavit; (3) Trooper Lee's affidavit; (4) Trooper Pete Amador's affidavit; (5) Trooper Price's affidavit; (6) Trooper Ruben Garcia's affidavit; (7) the hand-written statement of Maria Sparks[3]; (8) excerpts from Hallett's deposition testimony; (9) excerpts from Lee's deposition testimony; (10) Trooper Dunaway's

---

[3] Maria Sparks, the wife of Robert Sparks, was a passenger in the van involved in the collision.

6

offense report; (11) excerpts from Dunaway's deposition testimony; (12) a DVD of the pursuit taken from Dunaway's vehicle; (13) a "station activity log" of the pursuit; (14) deposition testimony of Adrienne Phipps, the dispatcher during the pursuit; and (15) excerpts from the deposition testimony of Alan H. Baxter, a forensic analyst who testified as an expert witness for Sparks.

Sparks filed a response[4] in which he argued, among other things, that "Trooper Hallett violated multiple laws that applied to his alleged emergency response" and "acted with reckless disregard for the safety of others." Specifically, he points to: (1) testimony by Trooper Price that Hallett violated section 546.001 of the transportation code, *see* TEX. TRANSP. CODE ANN. § 546.001(2) (authorizing emergency vehicles to proceed past a red light after slowing as necessary for safe operation); (2) testimony by Sergeant Garrett that Hallett should not have entered the intersection until it was apparent that all drivers had yielded the right-of-way; and (3) deposition testimony by Baxter that Hallett acted with reckless disregard and conscious indifference by entering the intersection against the light.

We summarize below the evidence relevant to DPS's plea to the jurisdiction argument that it retained its immunity pursuant to the "emergency exception" to the Act.

## A. DPS's Evidence

## 1. Trooper Hallett

In his report to Sergeant Garrett and in his affidavit,[5] Hallett stated that his vehicle took the lead in pursuing the motorcycle when Trooper Dunaway was blocked

---

[4] Sparks's response to DPS's plea to the jurisdiction incorporated all arguments and exhibits in his response to DPS's motion for summary judgment.

[5] Hallett's affidavit and report to Sergeant Garrett contain identical information.

by a large truck. Hallett stated that as the motorcycle entered the intersection, he "checked traffic to the left, right and across the intersection." Trooper Lee, seated in the front passenger seat, reported that traffic was "clear to the right." Hallett stated that he "slowed almost to a stop before entering the intersection." Hallett "eased [his] way forward" in an attempt to prevent the motorcycle from heading toward a school zone. As Hallett entered the intersection with his emergency lights and siren activated, he was hit by Sparks's vehicle. According to Hallett, when they approached Sparks's vehicle to determine if anyone was injured, Sparks stated that "he saw us and the motorcycle but he could not react."

In his deposition, Hallett testified that as he approached the intersection, because there was a vehicle blocking the center left-turn lane, he moved to the left, into the lane facing oncoming traffic. Hallett stated that the light was red, and that he looked "left and right and across" before entering the intersection. Hallett stated that his speed was "low" when he entered the intersection because "we came very close to a stop before that intersection."

## 2. Trooper Lee

In his affidavit, Trooper Lee stated that he activated the emergency lights and siren on the patrol vehicle when he and Hallett joined the pursuit. Lee was riding in the front passenger seat. Lee stated that when they approached the intersection, "Hallett stopped at the intersection and looked left." Lee checked to the right and told Hallett that it was clear. As Hallett slowly entered the intersection, they were struck by Sparks's vehicle.

8

Similarly, in his deposition testimony,[6] Lee stated that he saw Hallett look to the left, but cannot say whether Hallett looked to the left a second time. In Lee's opinion, Hallett entered the intersection with "due caution," even if he looked to the left only once, not twice.

### 3. Trooper Dunaway

In his deposition, Trooper Dunaway testified that his pursuit of the motorcycle was video-recorded by the camera in his patrol vehicle.[7] As the vehicles approached the intersection, Dunaway's vehicle was in the right-hand lane next to the curb. Although the video shows Hallett's vehicle as it approached the intersection, it does not show the collision because it occurred outside the camera's visual field. Dunaway stated that Hallett's vehicle slowed down at the intersection and that Hallett entered the intersection "[c]autiously." After the collision occurred, Lee signaled to Dunaway that Dunaway should continue the pursuit. The pursuit continued for another three minutes or so; the motorcyclist was then apprehended and arrested.

### B. Sparks's Evidence

In his response, Sparks argued that DPS is not entitled to retain its immunity pursuant to the emergency exception because Hallett violated various laws applicable to his conduct, including proceeding past a red light and moving into the lane facing oncoming traffic.

### 1. Trooper Price

---

[6] Unless otherwise noted, all cited depositions were conducted by Sparks's counsel.

[7] We have reviewed the video-recording of the pursuit taken from Trooper Dunaway's vehicle. No video-recording was available from the vehicle driven by Trooper Hallett. The recording equipment was not functioning because it needed a new tape inserted into the recorder.

9

Trooper Price was in charge of investigating the accident for DPS. At his deposition, he was questioned about the findings and conclusions in the report he submitted to Sergeant Garrett. In his report, Price found that Hallett: (1) had a red light as he came up to the intersection; (2) approached the intersection to the left of the center lane, in the oncoming-traffic lane; (3) had his emergency lights and siren activated; (4) proceeded into the intersection after stopping; and (5) violated section 546.001 of the transportation code, which permits proceeding past a red light "after slowing as necessary for safe operation." *See* TEX. TRANSP. CODE ANN. § 546.001. In his deposition testimony, Price was asked the basis for his conclusion that Hallett violated section 546.001. Price responded, "[s]olely the fact that another car hit him." Price stated that Hallett failed to properly clear the intersection before entering, but declined to characterize such conduct as "reckless." Price agreed that an officer has a responsibility to refrain from entering an intersection against a traffic light until after he has ensured that he can safely do so.

## 2. Sergeant Garrett

As the investigating supervisor, Sergeant Garrett prepared a "counseling record" directed to Hallett. At his deposition, Garrett acknowledged that the report states that Hallett "[f]ailed to exercise due caution during a pursuit by disregarding a red light at an intersection . . . ." Garrett's report states, "Trooper Hallett should not have entered the intersection until it was apparent that all drivers were clear of his intentions and had yielded the right of way for safe passage."

## 3. Alan Baxter

10

Baxter gave deposition testimony that in his opinion, Hallett "did not proceed safely" through the intersection. He also stated that when Hallett entered the intersection against the light, he exhibited "reckless disregard" and "conscious indifference" for the safety of others.

## C. Analysis

Sparks contends that the evidence establishes, or at least raises a fact issue, regarding whether Hallett acted recklessly or in conscious disregard of a high degree of risk of harm to others. We disagree.

DPS's undisputed evidence establishes that Trooper Hallett was responding to an emergency call with his emergency lights and siren activated.[8] The video recording and the testimony of Troopers Hallett, Lee, and Dunaway established that Hallett slowed or stopped as he reached the intersection. Hallett stated that he slowed almost to a stop and looked "left, right, and across" before entering the intersection. Lee stated that Hallett stopped at the intersection and looked to the left before entering the intersection with "due caution." Dunaway stated that Hallett slowed at the intersection and entered "cautiously." This evidence is sufficient to demonstrate that Hallett did not act with conscious indifference or reckless disregard for the safety of the public. *See City of Pasadena v. Kuhn*, 260 S.W.3d 93, 99–100 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding evidence did not establish officer's actions were taken with conscious indifference or reckless disregard where evidence showed officer was

---

[8] Sparks's expert, Alan Baxter, agreed that when Trooper Hallett entered the intersection, his emergency lights and siren were activated. Sparks was deposed by counsel for DPS. Sparks testified that he did not have an explanation for why he did not hear the siren or see the lights; he simply did not. He stated that there was "a lot of brush" and "high weeds" in the area that may have obscured Hallett's vehicle. When asked whether Hallett had his overhead lights activated when he entered the intersection, Sparks stated, "[o]nly to the point what I could see when he entered the intersection. I didn't see him any time before that."

11

responding to emergency, had activated his emergency lights and siren, slowed down before proceeding through intersection, and collided with vehicle); *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 701–02 (Tex. App.—Austin 2005, no pet.) (holding no evidence of reckless disregard for safety of others when officer entered intersection without stopping and witness did not hear brakes being applied); *Smith,* 126 S.W.3d at 545–46 (holding evidence insufficient to establish recklessness when ambulance driven to emergency with lights and sirens activated as it approached intersection, other drivers at intersection could hear and see sirens and lights, ambulance driver slowed down, looked, and then proceeded into intersection without coming to complete stop). We hold that DPS has demonstrated that Hallett complied with applicable statutes. *See* TEX. TRANSP. CODE ANN. § 546.005; *see also Hudson*, 179 S.W.3d at 701 (holding firefighter not reckless as a matter of law under emergency response exception where siren and lights were activated, driver slowed down and looked in both directions as reached the intersection); *Smith*, 126 S.W.3d at 545–46 (holding ambulance driver not reckless as a matter of law under emergency response exception where evidence showed lights and siren were activated, driver slowed and looked at intersection and observed drivers yielding to ambulance, and proceeded into intersection without coming to complete stop). Therefore, DPS met its burden to establish lack of subject matter jurisdiction. *See Martin*, 971 S.W.2d at 430.

Because DPS alleged and introduced evidence that the trial court lacked subject matter jurisdiction, the burden shifted to Sparks to raise a genuine issue of material fact on whether Hallett acted with conscious indifference to or reckless disregard for the

12

safety of others.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2); *Miranda*, 133 S.W.3d at 227-28; *Kuhn*, 260 S.W.3d at 100; *Hudson*, 179 S.W.3d at 701.

Sparks points to Trooper Price's conclusion that Hallett violated section 546.001 of the transportation code by entering the intersection against a red light.  However, Price also concluded that Hallett stopped before entering the intersection and stated that the basis for his conclusion that Hallett violated the statute was "[s]olely the fact that another car hit him."  We disagree that Price's conclusion raises a genuine issue of material fact.  Price also found that Hallett stopped before entering the intersection and specifically declined to characterize Hallett's conduct as "reckless."  Section 546.001(2) provides that an emergency vehicle operator responding to an emergency call is allowed to proceed against a red traffic light after slowing for safe operation.  *See* TEX. TRANSP. CODE ANN. § 546.001(2).  No evidence was presented that Hallett failed to slow down or stop before entering the intersection.  As noted, the video recording shows Hallett's vehicle slowing as it approaches the intersection.  We disagree with Price's conclusion that Hallett violated the statute simply because a collision occurred.  We hold that Price's conclusion is insufficient to raise a genuine issue of material fact as to whether Hallett acted recklessly.  *See Smith*, 126 S.W.3d at 546 (holding evidence that officer entered the intersection against red light insufficient to raise fact issue as to whether he acted recklessly); *see also City of Laredo v. Varela*, No. 04-10-619-CV, 2011 Tex. App. LEXIS 3485, at \*\*8–14 (Tex. App.—San Antonio May 11, 2011, no pet.) (mem. op.) (holding officer's failure to adhere to policy requiring emergency vehicles to come to complete stop and failure to remember looking both ways before entering intersection did not raise fact issue as to whether officer acted in conscious indifference

13

to or reckless disregard for safety of others); *City of Arlington v. Barnes*, No. 02-07-249-CV, 2008 Tex. App. LEXIS 2236, at **12–14 (Tex. App.—Fort Worth Mar. 27, 2008, pet. denied) (mem. op.) (holding that written reprimand stating that officer "failed to exercise due care" and failed to comply with section 546.005 were evidence that officer only acted negligently and did not raise fact issue on reckless disregard).

Sparks also cites Sergeant Garrett's report that states that Hallett failed to exercise due caution by disregarding the red light and that he should not have entered the intersection until he was certain that other drivers had yielded the right of way. Again, we disagree that Garrett's conclusion raises a genuine issue of material fact as to whether Hallett acted recklessly. Garrett's report also confirms that Hallett's vehicle "slowed down" as it approached the intersection. When questioned at his deposition about the counseling record stating that Hallett failed to exercise due caution, Garrett responded that he did not believe Hallett needed to be counseled, but that he was instructed to counsel Hallett by his supervisor, John Rodriguez. No evidence was presented, either in Garrett's report or deposition testimony, that Hallett failed to slow as necessary before entering the intersection or otherwise acted with reckless disregard for the safety of others. *See Hudson*, 179 S.W.3d at 702 (holding witness's statement that firefighter entered intersection without stopping and witness did not hear brakes being applied was not evidence of recklessness or conscious indifference); *see also Barnes*, 2008 Tex. App. LEXIS 2236, at **12–14 (holding written reprimand stating that officer failed to exercise due care and failed to comply with transportation code did not raise fact issue on reckless disregard). We hold that Garrett's statements are insufficient to raise a genuine issue of material fact as to whether Hallett acted recklessly.

14

Finally, Sparks cites Baxter's deposition testimony that in his opinion, by entering the intersection against the light, Hallett exhibited "reckless disregard" and "conscious indifference" for the safety of others. Again, we disagree that Baxter's conclusory statements raise a genuine issue of material fact as to whether Hallett acted recklessly. Baxter testified that it was "very dangerous" for Hallett to enter the intersection in the oncoming-traffic lane while Dunaway was in the far-right-hand lane because a driver's attention would be on Hallett's vehicle and such an action "split[s] the visual plain [sic] for oncoming traffic."[9] Baxter described Hallett's actions as follows:

> Now, when he looked in that intersection to see if it was clear, he looked to his left, but not when he was in the intersection. He looked to his left as they were approaching the intersection, and that was a considerable different—or distance back from the intersection proper. He looked to his left, he checked that, then they proceeded into the intersection; he didn't stop. I believe he's not required to stop, but he's required to slow. They slowed down the vehicle, and then without checking left again he proceeded into the intersection in pursuit of the motorcycle, and that's when he was struck by Mr. Sparks.

Baxter's testimony confirms that as Hallett approached the intersection, he slowed down and looked to his left. Baxter offered no evidence regarding how far Hallett was from the intersection when he looked left, and no evidence that Hallett was so far away when he looked left that he was unable to determine whether he could proceed safely through the intersection.[10] *See Hudson*, 179 S.W.3d at 702 (holding conclusory observation that fire truck "slammed" into plaintiff's car "full force" does not raise fact issue about driver's regard for the safety of others or whether he slowed as necessary). We hold that

---

[9] Baxter provided no further explanation of the danger, other than that the situation "actually catalyzed [sic] traffic in between there."

[10] We note that Baxter acknowledged that the video does not independently confirm whether or when Hallett looked to the left.

Baxter's conclusory statements did not raise a genuine issue of material fact as to whether Hallett acted recklessly.[11]

## IV. Conclusion

The evidence conclusively established that Sparks's claim arises "from the action of an employee while responding to an emergency call or reacting to an emergency situation" and that the employee's "action [was] in compliance with the laws and ordinances applicable to emergency action . . . ." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.055. Consequently, the waiver of sovereign immunity in the Tort Claims Act "does not apply," *id.*, and DPS retains its immunity from suit arising from Hallett's actions.

Accordingly, we sustain DPS's issue challenging the denial of its plea to the jurisdiction, reverse the trial court's order in appellate cause number 13-10-00401-CV denying DPS's plea to the jurisdiction, and render judgment dismissing Sparks's claims against DPS for lack of subject-matter jurisdiction. Because we hold that the trial court did not have subject matter jurisdiction, we need not address DPS's challenges to the denial of its motion for summary judgment, *see* TEX. R. APP. P. 47.1, and also dismiss appellate cause number 13-10-00402-CV for want of jurisdiction.

DORI CONTRERAS GARZA
Justice

Delivered and filed the
14th day of July, 2011.

---

[11] We also conclude that even if viewed as evidence of negligence, Baxter's statement that it was "very dangerous" for Hallett to enter the intersection in the oncoming-traffic lane did not raise a genuine issue of material fact as to whether Hallett acted recklessly.

16