**REVERSE and RENDER in part; REMAND and Opinion Filed March 27, 2020**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-19-00045-CV**
_____

**CITY OF DALLAS, Appellant**

**V.**

**ROSA RODRIGUEZ, Appellee**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-14889**

## MEMORANDUM OPINION

Before Justices Bridges, Nowell, and Evans[1]
Opinion by Justice Bridges

On the Court's own motion, we withdraw our opinion issued August 7, 2019

and vacate our judgment of that date. The following is now the opinion of the Court.

The City of Dallas appeals the trial court's order denying its plea to the

jurisdiction in the underlying case involving Rosa Rodriguez' collision with a

marked police car. In three issues, the City argues the trial court abused its discretion

in sustaining Rodriguez' objections to the City's evidence offered in support of its

---

[1] The Honorable Justice David Evans succeeded the Honorable Ada Brown, a member of the original panel. Justice Evans has reviewed the briefs and the record before the Court.

plea to the jurisdiction, the trial court erred in denying its plea to the jurisdiction, and the City is immune from suit because its officer is entitled to official immunity. We reverse the trial court's order, grant the City's plea to the jurisdiction, dismiss appellee's claims for want of subject matter jurisdiction, and remand this cause to the trial court for further proceedings consistent with this opinion.

In October 2017, Rodriguez filed her original petition in which she alleged she was injured when a vehicle operated by Veronica Alejandro, a Dallas police officer, disregarded a red light and caused Rodriguez' vehicle to strike Alejandro's vehicle. Rodriguez alleged claims of negligence, gross negligence, respondeat superior, and negligence per se.

In October 2018, the City filed a plea to the jurisdiction in which it argued Alejandro was entitled to official immunity and the City was therefore shielded from liability by sovereign immunity. Specifically, the City argued Alejandro was performing a discretionary function within the scope of her employment and acting in good faith. The plea to the jurisdiction was supported by Alejandro's affidavit in which she described the circumstances of the accident and explained her actions and perception of the urgency of the situation and the risks involved.

In response to the City's plea to the jurisdiction, Rodriguez first objected to Alejandro's affidavit as "hearsay and violations of the best evidence rule." Rodriguez argued Alejandro's affidavit was fatally defective on the grounds that it failed to unequivocally show it was based on personal knowledge and it made no

representation that the facts disclosed were true. Rodriguez also objected that Alejandro's affidavit contained self-serving statements, legal conclusions, and conclusory statements of fact. Accordingly, Rodriguez argued, five paragraphs of Alejandro's affidavit should be excluded.

In addition, Rodriguez argued Alejandro approached the intersection where the traffic signal controlling travel for Rodriguez was green, and the traffic signal for Alejandro was red. Nevertheless, Alejandro approached the intersection without coming to a complete stop to ensure she could safely cross the intersection and avoid a collision. Rodriguez alleged Alejandro entered the intersection on a red light and proceeded through the intersection without her lights and sirens on. Rodriguez attached a copy of the collision report which contained a "City Driver's Statement" in which Alejandro stated she came to a complete stop before entering the intersection and proceeded very slowly through the intersection. Alejandro also stated that "all traffic on the northbound side had stopped and was giving [her] passage." Rodriguez argued that, although Alejandro stated she came to a complete stop at the intersection, her dash cam showed her speed never read zero until after the collision.

Rodriguez alleged the accident was investigated by the Dallas police, and the investigator found that Alejandro's disregarding a stop and go signal was a contributing factor in the accident. The investigator also "noted that the vehicle in front of [Rodriguez] proceeded through the intersection prior to [Rodriguez]," and

this contradicted Alejandro's statement that northbound travel had stopped to allow her to proceed through the intersection. Rodriguez argued Alejandro's actions were not discretionary because a general order of the Dallas police chief required officers to "come to a complete stop" before entering an intersection; therefore, because the order was mandatory, Alejandro had no discretion to ignore the order and was required to obey the order. Rodriguez also argued Alejandro did not act in good faith because she violated the order requiring her to come to a complete stop and the traffic laws of Texas when she ran a red light without coming to a complete stop. In making this argument, Rodriguez argues Alejandro's dash cam "shows the triggers for her lights and sirens to be going on and off up until the accident" and, "in listening to the audio it is clear that Officer Alejandro's overhead sirens were not activated and cannot be heard until after the collision." Rodriguez added "[i]t was later noted the sirens on Officer Alejandro's vehicle were not working properly."

In her brief, Rodriguez argues Alejandro's dash cam shows that she never came to a complete stop at the intersection. Rodriguez argues Mario Rodriguez testified Alejandro was driving without her lights and siren when the collision occurred, and an incident report stated Alejandro's sirens did not work properly, contradicting Alejandro's statement in her affidavit that her emergency lights, siren, and air horn were activated. Rodriguez complains Alejandro did not mention in her affidavit that her view was obstructed by another vehicle and that at least one other vehicle besides Rodriguez' did not stop and yield.

–4–

The dash cam video shows Alejandro constantly honking her patrol car's air horn as she approached the intersection where the collision occurred. The video's GPS "speed" indication shows Alejandro's speed at 23 miles per hour just before Alejandro appears to come to a complete stop. The speed indicator quickly drops to nine and then to two miles per hour after she stopped and the indicator immediately shows her speed at three miles per hour as she slowly entered the intersection. It is obvious from viewing the video in relation to the GPS speed indicator that the indicator is delayed in its indication of Alejandro's speed at a given instant. Alejandro's stop at the intersection is very brief, but the stop is apparent from the video, and it is clear that the GPS simply did not have time to read zero before Alejandro was moving again. In effect, the laws of physics showed Alejandro stopped, and the readout on the GPS was not accurate. Alejandro's speed fluctuated between two, three, six, three, and seven miles per hour as she proceeded through the intersection, and she reached fourteen miles per hour and had almost cleared the intersection when the collision occurred. As Alejandro proceeded, all other vehicles cleared the intersection, giving her a clear line of sight at the road ahead.

The video also indicates "Triggers" including lights, siren, and brakes. Just as Alejandro stops at the intersection, the siren indicator flickers on and off for a second, but Alejandro was continuously honking her air horn at the time, and it is difficult to hear the siren clearly until after the collision when Alejandro stops honking the air horn. However, the siren is audible immediately before the collision

–5–

as Alejandro pulls into the intersection. The lights indicator stayed on continuously throughout Alejandro's approach to the intersection and the following collision, although the lights themselves are not visible in the video.

On December 31, 2018, the trial court signed an order denying the City's plea to the jurisdiction. The order also sustained Rodriguez' objections to Alejandro's affidavit except for her statement that "The potential danger posed by proceeding through the intersection was far less, considering the above factors, than the danger posed to the officers and victims involved in the 6XE major disturbance (violence) emergency." This appeal followed.

In its first issue, the City argues the trial court abused its discretion in sustaining Rodriguez' objections to the City's evidence offered in support of its plea to the jurisdiction. The City argues the trial court erred in striking twenty sentences of Alejandro's affidavit, effectively striking the bulk of Alejandro's testimony. Specifically, the City argues that, by "failing to identify which of her general objections applied to the larger parts of Alejandro's affidavit being challenged, Rodriguez failed to put the district court on notice of the precise grounds on which she challenged the affidavit."

The party contesting jurisdiction in a plea to the jurisdiction must meet the summary-judgment standard of proof to support its contention that the trial court lacks subject-matter jurisdiction. *HSBC Bank USA, N.A. v. Watson*, 377 S.W.3d 766, 773 (Tex. App.—Dallas 2012, pet. dism'd). An appellate court reviews a trial

court's ruling that sustains an objection to summary judgment evidence for an abuse of discretion. *Cantu v. Horany*, 195 S.W.3d 867, 871 (Tex. App.—Dallas 2006, no pet.). An appellant has the burden to bring forth a record that is sufficient to show the trial court abused its discretion when it sustained the appellee's objections to the summary judgment evidence. *See id.*

Rodriguez' response to the City's plea to the jurisdiction objected to Alejandro's testimony in her affidavit as "hearsay and violations of the best evidence rule," evidence of an interested witness, unsubstantiated opinions or unilateral subjective determinations of facts, self-serving statements not susceptible of being readily controverted, legal conclusions, and conclusory statements of fact. Rodriguez' response then separately listed sections of Alejandro's affidavit to which Rodriguez objected. Rodriguez did not state the specific grounds on which each identified section of the affidavit was objectionable. We conclude these objections were not sufficiently specific. *Stewart v. Sanmina Texas L.P.*, 156 S.W.3d 198, 207 (Tex. App.—Dallas 2005, no pet.) (rejecting argument that evidence was substantively defective where objections identified only number of particular paragraphs and exhibits with no description of particular basis for objection); *see Womco, Inc. v. Navistar Int'l Corp.*, 84 S.W.3d 272, 281 n.6 (Tex. App.—Tyler 2002, no pet.) (objection that individual paragraph of affidavit "contains unsubstantiated legal conclusions" is itself conclusory because it fails to identify which statements in individual paragraph are objectionable or offer any explanation

to trial court as to precise bases for objection); *Garcia v. John Hancock Variable Life Ins. Co.*, 859 S.W.2d 427, 434 (Tex. App.—San Antonio 1993, writ denied) (objection that individual paragraphs contained "speculation" and "conclusion" failed to give grounds to support inadmissibility argument). Under these circumstances, we conclude the trial court abused its discretion in sustaining Rodriguez' objections to Alejandro's affidavit. *See Cantu*, 195 S.W.3d at 871. We sustain the City's first issue.

In its second issue, the City argues the trial court erred in denying its plea to the jurisdiction. In its third issue, the City argues it is immune from suit as a result of Alejandro's official immunity.

Immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Whether a court has subject matter jurisdiction and whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction are questions of law. *Id.* at 226. Therefore, we review de novo a trial court's ruling on a jurisdictional plea. *Id.*

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively

demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Id.* at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *Id.* When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable. *Id.* Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* at 227-28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

This standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). *Id.* The standard allows the state in a timely manner to extricate itself from litigation if it is truly immune. *Id.* After the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, the plaintiffs are required, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue. *Id.* A summary judgment may be based on uncontroverted testimonial evidence of an interested witness if the evidence is clear, positive and direct, otherwise credible and free from contradiction, and could have been readily controverted. TEX. R. CIV. P. 166a(c); *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 698 (Tex. App.—Austin 2005, no pet.).

When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant. *Miranda*, 133 S.W.3d at 228. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

Official immunity is an affirmative defense. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 465 (Tex. 1997). A governmental employee has official immunity for the performance of discretionary duties within the scope of the employee's authority, provided the employee acts in good faith. *Id.* at 466. A court must measure good faith in official immunity cases against a standard of objective legal reasonableness,

without regard to the employee's subjective state of mind. *Id.* Good faith depends on how a reasonably prudent officer could have assessed the need to which an officer responds and the risks of the officer's course of action, based on the officer's perception of the facts at the time of the event. *Id.* at 467 (applying *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994) (good faith balancing test in context of emergency response case). The "need" aspect of the test refers to the urgency of the circumstances requiring official intervention. *Id.* In the context of an emergency response, need is determined by factors such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result. *Id.* The "risk" aspect of good faith, on the other hand, refers to the countervailing public safety concerns: the nature and severity of harm that the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident could prevent the officer from reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer. *Id.*

In its plea to the jurisdiction, the City alleged that, on March 2, 2017, at approximately 2:40 p.m., Alejandro was on routine patrol duty in a marked Dallas police patrol car. Through the 911 call center, Alejandro was dispatched to a report of a person breaking windows and threatening to shoot a woman at her home. The

call was dispatched as a "code 3" assignment, which meant the call was "to be given priority and answered without delay."

Here, Alejandro's affidavit stated she understood that, in making discretionary decisions during emergency calls, she must weigh the need to urgently respond to the emergency call against the risk involved to the general public when responding to the emergency. Based on her law enforcement experience and responding to emergency calls, Alejandro understood that "6X major disturbance (violence) emergency calls" needed to be responded to immediately because fellow officers and/or victims could be in imminent danger from the disturbance, and the immediate presence of other police officers is necessary to prevent serious injury to the police officers and/or the victims.

Alejandro's affidavit stated that, when she proceeded through the intersection after stopping, she believed in good faith that the need to get to the scene of the disturbance emergency outweighed what she perceived to be the minimal risk of an accident. Alejandro recognized that there was some risk in deciding to proceed through an intersection on a red light. Alejandro came to a complete stop, looked to her right and left, and activated the air horn on her patrol car. Given the dry condition of the roadway at the time and the fact that traffic at the intersection appeared to be yielding to her vehicle, Alejandro's emergency lights, siren and air horn were activated, and Alejandro had stopped at the light and proceeded slowly through the

intersection, Alejandro did not perceive that proceeding through the intersection would cause any danger to any other driver near her location.

Alejandro's affidavit stated that, considering the above factors, the potential danger posed by proceeding through the intersection was far less than the danger posed to the officers and victims involved in the 6X major disturbance (violence) emergency. Given that Alejandro had been dispatched through the 9-1-1 system to respond and was expected to respond urgently to provide assistance to other officers and victim(s), there was no other reasonable alternative but to proceed through the intersection in the manner in which she proceeded. From her point of view at the time and at all times while en route to the call, Alejandro did not engage in conduct she believed would pose a likelihood of serious injury to anyone. Alejandro stated she was acting in good faith and within the scope of her discretionary authority as a Dallas police officer. Alejandro stated her actions were reasonable in light of the circumstances, and any reasonably prudent police officer, under the same or similar circumstances, could have believed Alejandro's actions were justified.

Section 546.001(2) of the transportation code provides that the operator of an emergency vehicle may proceed past a red or stop signal or stop sign after slowing as necessary for safe operation. TEX. TRANSP. CODE ANN. § 546.001(2). The fact that a collision occurred does not amount to a showing that an officer violated the statute and is insufficient to raise a genuine issue of material fact as to whether the officer acted recklessly. *See Tex. Dep't of Pub. Safety v. Sparks*, 347 S.W.3d 834,

842 (Tex. App.—Corpus Christi–Edinburg 2011, no pet.); *see also City of Laredo v. Varela*, No. 04–10–619–CV, 2011 WL 1852439, *3–5 (Tex. App. —San Antonio May 11, 2011, no pet.) (mem. op.) (holding officer's failure to adhere to policy requiring emergency vehicles to come to complete stop and failure to remember looking both ways before entering intersection did not raise fact issue as to whether officer acted in conscious indifference to or reckless disregard for safety of others).

A police officer's own affidavit may establish good faith. *City of La Joya v. Herr*, 41 S.W.3d 755, 761 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (citing *Barker v. City of Galveston*, 907 S.W.2d 879, 888 (Tex. App.—Houston [1st Dist.] 1995, writ denied)). An officer's good faith is not rebutted by evidence that he violated department policy. *City of Fort Worth v. Robinson*, 300 S.W.3d 892, 900 (Tex. App.—Fort Worth 2009, no pet.) (citing *Johnson v. Campbell*, 142 S.W.3d 592, 596 (Tex. App.—Texarkana 2004, pet. denied)).

The record shows the need to which Alejandro was responding was a potentially life threatening emergency involving several unknown people beating on a woman's door and threatening her with a gun. Alejandro stopped at the intersection, and she believed in good faith that the need to get to the scene of the emergency call outweighed the perceived minimal risk of an accident. The road was dry, traffic "appeared to be yielding to [Alejandro's] vehicle," and Alejandro's emergency lights, siren, and air horn were activated. While there may have been some malfunction with Alejandro's lights and siren, they were nevertheless

–14–

activated, and Alejandro used her air horn continuously. Alejandro did not perceive that proceeding through the intersection would cause any danger to any other driver near her location. Alejandro recognized that there was some risk in deciding to proceed through an intersection on a red light. However, the potential danger posed by proceeding through the intersection was far less than the danger posed to the officers and victims involved in the 6X major disturbance (violence) emergency. Under the facts and circumstances of this case, we conclude appellees failed to raise a factual dispute as to whether Alejandro acted recklessly or in violation of the Texas Transportation Code. *See Sparks*, 347 S.W.3d 834 at 842; *Varela*, 2011 WL 1852439 at *3–5. Further, we conclude the evidence conclusively established Alejandro acted in good faith. *See Wadewitz*, 951 S.W.2d at 465-67. Accordingly, the trial court erred in denying the City's plea to the jurisdiction. We sustain the City's second and third issues.

We reverse the trial court's order, grant the City's plea to the jurisdiction, dismiss appellee's claims for want of subject matter jurisdiction, and remand this cause to the trial court for further proceedings consistent with this opinion.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

190045F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF DALLAS, Appellant

No. 05-19-00045-CV V.

ROSA RODRIGUEZ, Appellee

On Appeal from the 116th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-17-14889. Opinion delivered by Justice Bridges. Justices Nowell and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that:

the City's plea to the jurisdiction is **GRANTED**, and Rosa Rodriguez' claims against the City are **DISMISSED** for want of subject matter jurisdiction. This cause is remanded to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered March 27, 2020.