

# NUMBER 13-20-00267-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

TEXAS DEPARTMENT OF
PUBLIC SAFETY,                                                    Appellant,

v.

CHRISTOPHER ESCOBAR,
ALISA COLCHADO,
AND ALISA N. ESCOBAR,                                            Appellees.

---

### On appeal from the 206th District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Hinojosa, Tijerina, and Silva
### Memorandum Opinion by Justice Tijerina

Appellant Texas Department of Public Safety (DPS) appeals from the trial court's

denial of its plea to the jurisdiction and motion for summary judgment. Appellees

Christopher Escobar, Alisa Colchado, and Alisa N. Escobar sued DPS under the Texas

Tort Claims Act (TTCA) for damages due to a vehicular accident caused by a DPS employee. By two issues, DPS contends that the trial court should have granted its plea to the jurisdiction and its motion for summary. We reverse and render.

## I. PERTINENT FACTS

On March 22, 2018, DPS officers Angel Hernandez and his partner, Corporal Julio Alaniz, observed a vehicle run a red light at an intersection in Edinburg, Texas. The officers pursued the vehicle to initiate a traffic stop. Trooper Hernandez then drove his vehicle against the red light and across the same intersection to make a left turn. According to both officers, Trooper Hernandez slowed down and checked for cross traffic. Corporal Alaniz, who sat in the passenger seat of the vehicle, stated that he initiated the overhead lights and siren. The dashcam video of the incident was attached to DPS's plea to the jurisdiction. As Trooper Hernandez drove his DPS vehicle across the intersection, his vehicle collided with Escobar's vehicle.

Appellees filed suit against the DPS. DPS filed a plea to the jurisdiction denying that it had waived sovereign immunity, and it filed a motion for summary judgment claiming that Trooper Hernandez acted in good faith. The trial court denied the DPS's plea and motion for summary judgment. This appeal ensued.

## II. PLEA TO THE JURISDICTION

By its first issue, DPS contends that the trial court should have granted its plea to the jurisdiction because Trooper Hernandez "conducted an emergency pursuit in compliance with the law and with due regard for the safety of others, as required by the Emergency Exception to the waiver of the State's sovereign immunity." Appellees

2

respond that "the emergency exception to the [TTCA] does not apply because Trooper Hernandez acted with conscious indifference and/or reckless disregard when he entered the intersection . . . against the red light without continuously operating his siren when his vision was obscured."

## A.    Standard of Review

We review a plea to the jurisdiction under a de novo standard of review. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). A plea to the jurisdiction seeks to dismiss a case for want of jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

> A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. The claims may form the context in which a dilatory plea is raised, but the plea should be decided without delving into the merits of the case. The purpose of a dilatory plea is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached.

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (internal citations omitted).

When, a party challenges the existence of jurisdictional facts in its plea to the jurisdiction, we review the evidence in the light most favorable to the plaintiff to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). It is the plaintiff's burden to affirmatively demonstrate the trial court's jurisdiction; thus, the plaintiff has the burden to present sufficient evidence to create a genuine issue of material fact regarding the jurisdictional issue. *Id.* at 552. The trial court should not grant the plea if the evidence raises a fact issue regarding

3

jurisdiction. *Miranda*, 133 S.W.3d. at 227–28. However, if the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Miranda*, 133 S.W.3d at 228.

## B. Immunity

Local governmental entities have absolute immunity from suit unless immunity has been expressly waived by the Legislature. *Miranda*, 133 S.W.3d at 224. Immunity deprives a trial court of subject matter jurisdiction. *Id.* The TTCA provides a limited waiver of sovereign immunity in certain situations. *See generally*, TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A). The TTCA waives a governmental unit's immunity for injury or property damage which is proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment when the injury or property damage arose from the operation or use of a motor-driven vehicle, and "the employee would be personally liable to the claimant according to Texas law." *Id.*; *City of Dallas v. Hillis*, 308 S.W.3d 526, 530 (Tex. App.—Dallas 2010, pet. denied).

However, immunity is not waived under the well-known emergency exception to the TTCA. TEX. CIV. PRAC. & REM. CODE ANN. § 101.055. Section 101.055 provides that the TTCA's waiver of immunity is inapplicable when a claim arises from a State employee's action "while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others." *Id.*; *Quested v.*

4

*City of Houston*, 440 S.W.3d 275, 284 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

## C.     Conscious Indifference or Reckless Disregard

The Texas Transportation Code sets out the laws on operating an emergency vehicle. *See* TEX. TRANSP. CODE ANN. §§ 546.001–.006; *Perez v. Webb County*, 511 S.W.3d 233, 236 (Tex. App.—San Antonio 2015, pet. denied). Section 546.005 provides that an emergency vehicle operator must drive "with appropriate regard for the safety of all persons" and is not relieved of the "consequences of reckless disregard for the safety of others." TEX. TRANSP. CODE ANN. § 546.005. A person commits the offense of reckless driving if "the person drives a vehicle in willful or wanton disregard for the safety of persons or property." *Id.* § 545.401(a).

The Texas Supreme Court held that the uncodified predecessor of § 546.005 imposed "a *duty* [for the emergency vehicle operator] to drive with due regard for others by avoiding negligent behavior"; however, the supreme court emphasized that liability only arises due to reckless conduct. *Perez*, 511 S.W.3d at 236 (quoting *City of Amarillo v. Martin*, 971 S.W.2d 426, 431 (Tex. 1998)). Recklessness in the TTCA context "requires more than a momentary judgment lapse—it requires a showing that the driver committed an act he knew or should have known posed a high degree of risk of serious injury." *Id.* The court stated, "[w]ere we to . . . impose liability generally on emergency vehicle operators for mere negligence, we would render meaningless the portion of [§] 101.055 that specifically excludes emergency vehicle operators from the waiver of immunity for negligence." *Id.* (quoting *Martin*, 971 S.W.2d at 430). Accordingly, a violation of § 546.005 requires a showing that the driver committed an act he knew or should have known posed

5

a high degree of risk of serious injury. *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 99 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Perez*, 511 S.W.3d at 236. This recklessness standard requires "proof that a party knew the relevant facts but did not care about the result." *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 n.19 (Tex. 2006).

When faced with "an official traffic-control device," a motorist is required to stop and "may proceed when the intersection can be safely entered without interference or collision with traffic using a different street or roadway." TEX. TRANSP. CODE ANN. § 545.151(a)(2). Under certain circumstances, police officers are authorized to violate traffic laws so long as it is safe to do so. *See id.* § 546.001(2). For example, § 546.001(2) authorizes a police officer to "proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation." *Id.* § 546.001(2); *Perez*, 511 S.W.3d at 236. "The operator must use, at his discretion and in compliance with local government or department policy, appropriate audible or visual signals." *Tex. Dep't of Pub. Safety v. Sparks*, 347 S.W.3d 834, 838 (Tex. App.—Corpus Christi–Edinburg 2011, no pet.) (citing TEX. TRANSP. CODE ANN. § 546.003). Moreover, an operator of a motor vehicle, "on the immediate approach of a police vehicle using an audible signal . . . unless otherwise directed by a police officer, shall yield the right-of-way, immediately pull over to the right-hand curb of the roadway clear of any intersection, and stop until the emergency or police vehicle has passed." *Id.* (citing TEX. TRANSP. CODE ANN. § 545.156).

D.    **Analysis**

It is undisputed that Trooper Hernandez ran a red light while making a left turn pursuant to § 546.001(2) due to an emergency. Thus, the issue here is whether Trooper

6

Hernandez knew the relevant facts but did not care about the result. *See City of San Antonio*, 201 S.W.3d at 672 n.19.

Trooper Hernandez stated in his affidavit attached to the DPS's plea to the jurisdiction that he looked left and right prior to and while crossing the intersection. He averred that he was unable to see the third lane of traffic where Escobar was driving as his view was blocked by the traffic that had yielded to Trooper Hernandez's vehicle.

The dash cam video shows that while Trooper Hernandez turned his vehicle left against the red light to pass through the intersection, the overhead lights were activated. In addition, in the video, the siren can be heard for approximately two seconds. After a short pause of approximately one second, the siren can again be heard for approximately two seconds followed by a second pause. The collision then occurred almost immediately after the second pause. The video shows that the oncoming traffic in the first two lanes stopped for Trooper Hernandez's vehicle, and some of the vehicles stopped in the middle of the intersection. In the video, Trooper Hernandez appears to be traveling at a slow speed, and he stated in his affidavit that he was traveling below the thirty mile per hour speed limit. A diagram of the collision was attached to DPS's plea to the jurisdiction as shown below.



The dash camera shows the following view from Trooper Hernandez's perspective approximately four seconds prior to the collision. In the video, at this point, traffic began to yield the right of way to Trooper Hernandez's vehicle.



The view from Trooper Hernandez's dash camera approximately two seconds before the collision is shown below.

8



The image above shows that the oncoming traffic had stopped for Trooper Hernandez's vehicle.

Finally, this is what Trooper Hernandez's dash camera view was approximately one second prior to the collision.



Appellees replied to DPS's plea to the jurisdiction arguing that the evidence supported a finding that "Trooper Hernandez acted with conscious indifference and/or

9

reckless disregard for the safety of others." Namely, appellees asserted: (1) Trooper Hernandez's "vision was obstructed as to the outside lane of travel," (2) Trooper Hernandez "failed to continuously operate his siren while proceeding through the intersection where the accident occurred, which would have alerted those whose vision was obstructed to his presence"; (3) "Trooper Hernandez proceeded into the intersection against the red light." Citing *Green v. Alford*, appellees argued in the trial court and on appeal that it has been "established that the failure to use a siren while proceeding into a busy intersection against a red light is [a] fact supporting a conclusion that the officer behaved recklessly." *See* 274 S.W.3d 5, 29 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (en banc).

In *Green*, some witnesses testified that the emergency vehicle's siren was off while others testified that it was on. *Id.* at 11. In addition, evidence was presented that the defendant, Christopher Green, a firefighter, did not brake or slow down his 39,500-pound firetruck prior to entering the intersection and running the red light. *Id.* Although many of the witnesses testified that Green was driving his vehicle at or below thirty miles per hour, another witness stated that Green had been going forty to fifty miles per hour when he ran the red light. *Id.* Another witness stated that the fire truck, "approached 'very fast' and did not slow or stop before entering the intersection." *Id.* A fellow firefighter and passenger of the fire truck stated, "Green should have known there was 'a substantial certainty' that if a smaller vehicle collided with [the fire truck], there was 'a high degree of risk of serious injury.'" *Id.*

Furthermore, there was evidence that Green had a progressive eye condition,

10

which caused him to have decreased distant vision, blurring, and could "affect a person's ability to drive" without corrective lenses. *Id.* The fire chief testified that "it would be a violation of state law, city ordinance, and department policy to drive a fire truck through a red light without the sirens activated," that doing so would be reckless, and that "[a]lthough there are recordings of radio transmissions from" the emergency vehicle driven by Green, "no siren can be heard on these recordings." *Id.* at 12. "As the trier of fact, the trial court [in *Green*] resolved the conflicting accounts of the accident" finding,

> inter alia, that (1) Green was not wearing corrective lenses as required at the time of the accident; (2) he entered the intersection against the traffic light; (3) due to traffic in the southernmost and middle lanes of westbound Fairmont Parkway, Green's view of the northernmost lane was impaired; (4) at the time of impact, the fire truck was traveling at 23 miles per hour; (5) the fire truck entered the intersection at a speed too fast to stop for westbound traffic that might be entering the intersection; (6) at the time of the collision, Green was not using the fire truck's siren or other audible warning signal; (7) Green did not act in good faith, and (8) Green's conduct was reckless.

*Id.* at 14.

The *Green* court concluded that the evidence supported a finding that Green did not act in good faith because "even the 'conduct at issue' is a matter of dispute." *Id.* The court explained:

> Green contends that he wore his glasses, used the fire truck's horn and siren, checked all three lanes on westbound Fairmont, and proceeded at no more than 10 miles per hour. But there is conflicting evidence that Green did not wear his glasses, did not use the fire truck's horn or siren, did not see the northernmost lane of westbound Fairmont, and entered that lane blindly traveling at 23 miles per hour.

*Id.* at 20. The plaintiff's expert witness testified that Green's speed was unsafe because he was driving a firetruck, which required more time to stop the heavy oversized vehicle.

11

*Id.* "The trial court found the latter evidence more credible, and Green presented no evidence that a reasonable firefighter could have believed such conduct was justified." *Id.* The *Green* court acknowledged that an emergency vehicle operator may lawfully run a red light in response to an emergency "after slowing for safe operation with audible or visual signals activated." *Id.* at 28. The court stated, "[h]ere, however, the factfinder concluded that Green did not slow as necessary for safe operation before entering the intersection." *Id.*

However, those are not the facts here. The undisputed evidence establishes that Trooper Hernandez and Corporal Alaniz utilized the sirens and the overhead lights.[1] It is undisputed that (1) Trooper Hernandez slowed his vehicle prior to entering the intersection, (2) he stopped his vehicle just before turning against the red light, and (3) he looked right and left prior to driving his vehicle against the red light. Moreover, there is no evidence that Trooper Hernandez was traveling at an unsafe speed, operating an oversized heavy vehicle requiring a slower speed to stop, or suffering from any impairment to his vision like the defendant in *Green. Cf. id.*

In *Sparks*, we found that similar facts did not raise a fact issue as to whether the emergency vehicle operator was reckless. *Sparks*, 347 S.W.3d at 841. We cited (1) "DPS's undisputed evidence . . . that [the DPS employee] was responding to an emergency call with his emergency lights and siren activated. . .," (2) "[t]he video recording and the testimony of [the DPS employee and other troopers] . . . that [the DPS

---

[1] Appellees did not provide any evidence challenging these facts.

12

employee driving the emergency vehicle] slowed or stopped as he reached the intersection, (3) [the employee's] statement "that he slowed almost to a stop and looked 'left, right, and across' before entering the intersection," (4) a statement from another trooper "that [the DPS employee] stopped at the intersection and looked to the left before entering the intersection with 'due caution,'" and (5) witness testimony that [the DPS employee] 'slowed at the intersection' and entered 'cautiously.'" *Id.*

Here, as the DPS employee in *Sparks*, Trooper Hernandez slowed as he reached the intersection, the overhead lights were activated, and the siren was utilized. In addition, DPS presented evidence that Trooper Hernandez looked left and looked right and observed that vehicles in the oncoming lane were either stopped or otherwise yielding the right of way before entering the intersection. Accordingly, we conclude under these circumstances that DPS alleged and introduced evidence that the trial court lacked subject matter jurisdiction. *See id.* at 842. Therefore, the burden shifted to appellees to raise a genuine issue of material fact on whether Trooper Hernandez acted with conscious indifference to or reckless disregard for the safety of others. *See id.* Appellees sole argument rested on a finding that

> Trooper Hernandez acted with conscious indifference and/or reckless disregard for the safety of others because (1) his vision was obstructed as to the outside lane of travel, and (2) he failed to continuously operate his siren while proceeding through the intersection where the accident occurred, which would have alerted those whose vision was obstructed to his presence.

However, given that neither even a momentary lapse in judgment nor negligent conduct supports a conclusion that the emergency vehicle operator acted recklessly, we

13

cannot conclude that Trooper Hernandez's act amounted to recklessness under these circumstances. *See City of San Antonio*, 201 S.W.3d at 672 n.19 ("[C]onscious indifference" and "reckless disregard" "require proof that a party knew the relevant facts but did not care about the result."). Appellees cite no authority, and we find none, supporting the conclusion that an emergency vehicle operator acts recklessly solely because his vision is obstructed, or he fails to continuously operate his siren. *See Sparks*, 347 S.W.3d at 842; *see also City of San Antonio*, 201 S.W.3d at 672 n.19.[2] Trooper Hernandez approached the intersection slowly, he looked left and right, the overhead lights were activated, the siren was activated two times prior to the collision, and he observed the traffic yielding to his emergency vehicle. Furthermore, there is no evidence that when Trooper Hernandez decided to continue through the intersection against the red light while his view was obscured, he knew the relevant facts but did not care about the result. *See City of San Antonio*, 201 S.W.3d at 672 n.19. Accordingly, we cannot conclude that appellees raised a question of fact regarding whether Trooper Hernandez acted recklessly. Therefore, we sustain DPS's first issue, and we conclude that the trial court should have granted DPS's plea to the jurisdiction.[3]

---

[2] In *Zapata*, a majority of this Court concluded that there was a fact issue regarding whether the police officer ran a red light. *Zapata v. City of Gonzales*, No. 13-18-00065-CV, 2020 WL 486489, at *5 (Tex. App.—Corpus Christi–Edinburg Jan. 30, 2020, no pet.) (mem. op.). It was undisputed that the officer did not slow down as he believed he had the green light. *Id.* We held that if the fact finder believed that the officer "drove through the intersection on a red light without slowing his vehicle or waiting for the cross-traffic to yield," then the fact finder could have found the officer's conduct reckless. *Id.* Here, there is no dispute regarding whether Trooper Hernandez slowed down prior to entering the intersection. Thus, *Zapata* is not applicable here. *See id.*

[3] Having sustained DPS's first issue, we need not address its second issue as it is not dispositive. *See* TEX. R. APP. P. 47.1.

###### III. CONCLUSION

We reverse the trial court's judgment denying DPS's plea to the jurisdiction and render judgment dismissing appellees' claims against DPS for lack of subject-matter jurisdiction.

JAIME TIJERINA
Justice

Delivered and filed on the
29th day of December, 2021.