

# Fourth Court of Appeals

## San Antonio, Texas

### DISSENTING OPINION

No. 04-14-00275-CV

Adriana P. **PEREZ**,
Appellant

v.

**WEBB COUNTY**,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2011CVT000305 D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Chief Justice
Concurring Opinion by:  Marialyn Barnard, Justice
Dissenting Opinion by:  Sandee Bryan Marion, Chief Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Marialyn Barnard, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  June 3, 2015

I respectfully dissent because I believe (1) in responding to a "domestic call in progress,"
Corporal Horacio Yzaguirre was reacting to an emergency situation and Adriana Perez did not
raise a fact issue on this question, and (2) Yzaguirre's actions were, at most, negligent and/or
merely a "momentary judgment lapse" and Perez did not raise a fact issue regarding whether
Officer Yzaguirre's actions were taken with "reckless disregard for the safety of others."
Therefore, I would affirm the trial court's order granting Webb County's motion to dismiss.

**EMERGENCY**

The Texas Tort Claims Act ("TTCA") does not define the terms "emergency call" or "emergency situation," but the Texas Supreme Court has interpreted the term "emergency" broadly. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 673 (Tex. 2006). The *Hartman* court held that "because the Act creates governmental liability where it would not otherwise exist, we cannot construe section 101.055(2) to exclude emergencies the Legislature might have intended to include." *Id.* at 672-73 (city was reacting to an emergency where, among other things, there was imminent threat of severe injury, loss of life or property due to city-wide flooding); *see also Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 410-11 (Tex. App.—Fort Worth 2006, pet. denied) (officers were reacting to emergency situation where suspect in back of patrol car tried to escape through window while being transported to jail); *see also Jefferson Cnty. v. Hudson*, No. 09-11-00168-CV, 2011 WL 3925724, at *3 (Tex. App.—Beaumont Aug. 25, 2011, no pet.) (mem. op.) ("emergency" refers to unforeseen circumstances requiring immediate action).

Perez contends Officer Yzaguirre was not responding to an emergency because (1) he was not dispatched to the scene; instead, he took it upon himself to respond; (2) the Webb County Sheriff's Office Standard Operating Procedures ("SOPs") characterize seven types of calls as "emergency calls," and a domestic disturbance is not among those listed; and (3) he was in heavy traffic seven miles away when he decided to respond as a Code 3 even though the call was only a Code 2. Perez also notes the evidence is conflicting on whether the call was a Code 2 or a Code 3. Perez contends that, although Officer Yzaguirre characterized the call as a Code 2 at the hearing on Webb County's motion to dismiss, he had earlier characterized it as a Code 3, which requires the use of both lights and siren.

Officer Yzaguirre testified he was in his patrol car working as a patrol and field supervisor when he heard a radio dispatch "for a domestic call in progress in Los Botines out of Highway

359."[1] Because he knew the officer assigned to the area of the call was on another case and because Officer Yzaguirre was only about seven miles from the location of the call, Officer Yzaguirre decided to respond to the call. Officer Yzaguirre testified that, as a supervisor, the Webb County Sheriff's Office Standard Operating Procedures ("SOPs") provide he could respond to emergency calls even though not dispatched. Therefore, although not dispatched to the scene, Officer Yzaguirre decided to respond. Officer Yzaguirre said a domestic violence call, such as the one here, is classified as "high priority" because "[i]t changes quickly, needs immediate attention due to the fact that it was an assault in progress, so you respond as quickly as possible."

The SOPs do not specifically list "domestic violence" as an "emergency call," but they do include "assault in progress with weapons involved," which is the call Officer Yzaguirre said he was responding to, although he admitted he did not know if a weapon was involved, but he assumed the potential of a weapon. The SOPS also include, among the list of "emergency calls," "other felony in progress," and Officer Yzaguirre believed that applied as well because if the suspect had a weapon the charge could be increased to an aggravated assault, "domestic violence would be more severe." Officer Yzaguirre also testified that the audio version of his dashboard camera indicated he needed to get to the scene quickly because there was "an actual call . . . [that a] suspect was on the scene still - - where officers were running urgent to the call. They were running faster, trying to get there quicker." There is also no dispute that, as a patrol supervisor, Officer Yzaguirre had the discretion to respond to the call even if he was not dispatched. He also said that because he is a supervisor, he is not required to inform dispatch whether he is "in a [Code] 3 or 2 or 1, as long as I make it to the call."

---

[1] The record does not contain a recording or transcription of the actual dispatch call.

The TTCA governs immunity for claims arising from a governmental employee's actions while "responding to an emergency call," as well as the employee's reactions to an "emergency situation." *See* TEX. CIV. PRAC. & REM. CODE § 101.055(2). Officer Yzaguirre was reacting to "a domestic call in progress," and he explained, without contradiction, that these calls are considered an emergency or high priority "due to the fact of the nature of the violence of the call." *See Tex. Dep't of Pub. Safety v. Little*, 259 S.W.3d 236, 239 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (officer responded to dispatch call requesting assistance with a wanted person, officer testified without contradiction that law enforcement officers consider such requests to be an emergency).

The fact that the SOPs do not expressly list "domestic violence" as an "emergency call," does not alter the undisputed facts regarding the reason Officer Yzaguirre responded to the call and the information to which he was reacting. *See, e.g., Little*, 259 S.W.3d at 239 (where officer did not learn that emergency situation did not exist until later, but was responding to mis-coded emergency call, no fact issue was raised regarding whether emergency exception applied). Nor does the fact that Officer Yzaguirre was seven miles away from the domestic violence incident alter the nature of the call as an "emergency." *See Hartman*, 201 S.W.3d at 673 ("The Hartmans argue that the City had at least six hours to place a barricade on the west side of the Rigsby flood, a period they deem too long to constitute an emergency. But we cannot restrict our review to Rigsby Avenue, any more than the City could. The statute exempts governments reacting to an emergency situation, which necessarily includes prioritizing some risks over others. Under the statute, evidence that the City had time to do more at Rigsby Avenue is not evidence that the City was no longer reacting to an emergency situation.").

Finally, I do not believe how the SOPs would define a Code 2 or Code 3 or whether the call was a Code 2 or a Code 3 raises a fact issue on whether Officer Yzaguirre was reacting to an emergency situation. According to Officer Yzaguirre, a Code 1 is for normal traffic, such as

stopping at stop signs, yielding to oncoming traffic, maintaining the speed limit, and abiding by all traffic codes. A Code 2 is for using the overhead lights with either the siren or air horn. Officer Yzaguirre stated a Code 2 does not necessarily mean you have to use lights and sirens. However, he said department policy allows for driving "a little bit over the speed limit" with a Code 2, usually for burglaries in progress, some domestic violence calls, and other calls. Officer Yzaguirre stated a Code 3 is "pretty much everything that the car can give you." He said the difference between a Code 2 and a Code 3 is the use of lights and sirens. However, the SOPs give officers some discretion to use either lights or audibles: "Officers may activate emergency signal devices on their own volition, if determined that the technology will aid in a crisis, emergency or perceived problem situation." Therefore, I do not believe whether the call was a Code 2 or a Code 3 raises a fact issue because there is no dispute that Officer Yzaguirre was using his emergency lights and air horn while responding to a "domestic call in progress," which I believe, under the circumstances here, was an emergency situation.

For these reasons, I conclude the County established Officer Yzaguirre was reacting to an emergency situation and Perez did not raise a fact issue on this question.

## COMPLIANCE WITH APPLICABLE LAWS/RECKLESS DISREGARD

The Texas Transportation Code allows the driver of an authorized emergency vehicle to proceed passed a red light and exceed the maximum speed limit, after slowing where necessary and so long as the driver does not endanger life or property. TEX. TRANSP. CODE ANN. § 546.001(2), (3) (West 2011). With certain exceptions, the Transportation Code also provides that the operator of an authorized emergency vehicle engaging in conduct permitted by section 546.001 "shall use, *at the discretion of the operator in accordance with policies of the department or the local government that employs the operator*, audible or visual signals that meet the pertinent

requirements of Sections 547.305 and 547.702."[2]  *Id.* § 546.003 (emphasis added).  "A police officer may operate an authorized emergency vehicle for a law enforcement purpose without using the audible or visual signals required by Section 546.003 *if the officer is . . . complying with a written regulation relating to the use of audible or visible signals adopted by the local government that employs the officer or by the department*."  *Id.* § 546.004(c)(2) (emphasis added).  These, and other, sections of the Transportation Code impose a duty on drivers of authorized emergency vehicles to "operate the vehicle with appropriate regard for the safety of all persons."  *Id.* § 546.005(1); *see also City of Amarillo v. Martin*, 971 S.W.2d 426, 434 (Tex. 1998) (holding predecessor to section 546.005 "imposes a *duty* to drive with due regard for others by avoiding negligent behavior").  The SOPs also require a driver to activate emergency signal devices and headlights "as required by law."  Similar to the Transportation Code, the SOPs impose a duty on drivers of emergency vehicles, when "executing maneuvers contrary to the Transportation Code . . . 'to drive with due regard for the safety of all persons.'"

However, although a driver of an emergency vehicle is under a duty to act "with appropriate regard for the safety of all persons," he is subject to liability only for "the consequences of *reckless disregard* for the safety of others."  *Id.* § 546.005(2) (emphasis added); *see also Martin*, 971 S.W.2d at 434 (holding same under predecessor statute); TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2) (West 2011) (waiver of immunity does not apply, inter alia, "if the action is not taken with conscious indifference or reckless disregard for the safety of others").  Similarly, the SOPs provide that "the exceptions exempting the drivers of emergency vehicles from provisions of the Transportation Code do not protect the driver 'from the consequences of his reckless disregard for the safety of others.'"

---

[2] Sections 547.305 and 547.702 deal with the physical requirements of the lights, and are not at issue in this appeal.

A person commits the offense of reckless driving if "the person drives a vehicle in wilful or wanton disregard for the safety of persons or property." *Id.* § 545.401(a). "Conscious indifference" and "reckless disregard" are not defined in the statute; but, those terms have been interpreted to require proof that a party knew the relevant facts but did not care about the result. *Hartman*, 201 S.W.3d at 672 n.19. Thus, a governmental entity is liable for damages resulting from the operation of an emergency vehicle only if the operator acted recklessly; that is, only if the operator "committed an act that the operator knew or should have known posed a high degree of risk of serious injury" but did not care about the result. *Martin*, 971 S.W.2d at 430; *Smith v. Janda*, 126 S.W.3d 543, 545 (Tex. App.—San Antonio 2003, no pet.). Under this standard, Perez was required to raise a fact issue on whether Officer Yzaguirre committed an act he knew or should have known posed a high degree of risk of serious injury, as opposed to a mere momentary judgment lapse. *Martin*, 971 S.W.2d at 430; *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 99 (Tex. App.—Houston [1st Dist.] 2008, no pet.). I do not believe a fact issue was raised.

As explained above, the SOPs provide for the use of lights and/or audibles based, to some degree, on whether the call is characterized as a Code 1, 2, or 3. There is conflicting evidence on whether Officer Yzaguirre was responding to a Code 2 call or a Code 3 call. At the hearing, he stated he was on a Code 2 call, which does not require the use of a siren. However, Officer Yzaguirre was confronted with his testimony before the Accident Review Board during which he characterized the call as a Code 3. Under the SOPs, a Code 3 call requires the use of red and blue emergency lights and sirens. The SOPs do not mention Code 2 calls, but according to Officer Yzaguirre, a Code 2 call requires the use of overhead red and blue lights with either an air horn or a siren. Because there is a fact issue on whether Officer Yzaguirre was responding to Code 2, which does not require the use of a siren, I assume, without deciding, that he was responding to a

Code 3 call, which does require the use of a siren. Nevertheless, this alone is not determinative of whether Perez raised a fact issue sufficient to satisfy her burden.

The evidence in the light most favorable to Perez reveals Officer Yzaguirre was unable to see Perez before he entered the intersection, he was driving at a speed over the posted limit, he drove through the red light at the intersection, and he had not activated the siren on his vehicle. However, I do not believe this evidence raises a fact issue on whether Officer Yzaguirre acted with conscious indifference or reckless disregard for the safety of others.

Officer Yzaguirre testified he did everything he could to be cautious, he slowed down as necessary, he used audible signals as necessary to alert citizens to his presence, and he braked and did not accelerate through an intersection. He also stated he checked in both directions as he entered an intersection. When asked his normal procedure for approaching an intersection when responding to an emergency, Officer Yzaguirre responded as follows:

> I try to use as much caution as possible, slow down at the intersection, using my overheads, my air horn, siren, depending on the nature of the call, the time of day, the road conditions, also to distinguish what I would use. Mostly, I would use caution.
>
> . . .
>
> Checking. Checking for pedestrian or other vehicles not listening to the emergency vehicle, checking left, checking right, using caution. Go slowly, as slow as possible, but still trying to answer the call with adequate time.
>
> . . .
>
> … So, I mean, you have numerous things going on in the car. You have the radio going on. You're trying to use different audibles to alert different types of people. You have your air horn going off as you're approaching intersections. I try to do everything possible to alert the community that I'm trying to get through to an emergency.

Officer Yzaguirre testified that, as a field supervisor, he has some discretion as to what type of equipment he may use when responding to an emergency. Officer Yzaguirre testified that in this instance, he looked both ways before entering the Chihuahua/Bartlett intersection against the red light. As indicated by the information from Officer Yzaguirre's dashboard camera, the

impact between his vehicle and Perez's occurred at the 08:17:26 timer mark. The triggers on the camera screen indicate he had turned on his emergency lights, used his air horn three or four times, and hit his brakes at the timer mark of 08:17:23 as he approached the Chihuahua/Bartlett intersection. His foot is still on the brakes at 08:17:24, but off the brakes at 08:17:25—one second before impact. Although he had slowed to about sixteen miles per hour at the prior intersection, Officer Yzaguirre was apparently travelling at approximately thirty-six miles per hour when he entered the Chihuahua/Bartlett intersection.

The use of his emergency lights and air horn, his testimony that he looked both ways before entering the Chihuahua/Bartlett intersection, his travelling at only about six miles over the speed limit, and the fact that his foot was on the brake until one second before impact indicates Officer Yzaguirre was aware of the dangers to others as he responded to the call and he was not consciously indifferent to or acting with reckless disregard for the safety of others. *See City of Laredo v. Varela*, 2011 WL 1852439, *4-5 (Tex. App.—San Antonio May 11, 2011, pet. denied) ("According to the clock on the video, the accident took place less than one second after the officer stopped applying his brakes, which indicates the officer was relatively close to the intersection when he stopped applying his brakes. The use of his siren, emergency lights and vehicle brakes are acts that indicate Officer Cortinas was aware of the dangers to others as he responded to the emergency call and he was not consciously indifferent to the plight of other drivers. . . . . Moreover, the use of his siren, emergency lights and vehicle brakes, indicate Officer Cortinas took precautions to avoid a risk of harm to others.").

Although Officer Yzaguirre may have been negligent, I do not believe Perez raised a fact question on whether he committed an act he knew or should have known posed a high degree of risk of serious injury, as opposed to a mere momentary lapse in judgment. *Martin*, 971 S.W.2d at 430.

## CONCLUSION

Officer Yzaguirre was driving an authorized emergency vehicle while responding to an emergency situation with his lights activated and while using his air horn. Therefore, Webb County met its burden to establish lack of subject matter jurisdiction. The burden then shifted to Perez to raise a material question of fact on whether Officer Yzaguirre was responding to an emergency call/emergency situation or whether he acted with conscious indifference to or reckless disregard for the safety of others. I do not believe she satisfied her burden; therefore, I would affirm the trial court's order granting Webb County's motion to dismiss for lack of jurisdiction.

Sandee Bryan Marion, Chief Justice