**Opinion issued December 22, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

NO. 01-19-00629-CV

_____

**ELMER RIVERA, KASSANDRA MORALES RODRIGUEZ, AND ISREAL MORALES, Appellants**

**V.**

**CITY OF HOUSTON, Appellee**

On Appeal from the 270th District Court
Harris County, Texas
Trial Court Case No. 2018-87546

## MEMORANDUM OPINION

This appeal arises from a car accident and centers on whether a City of Houston police offer held official immunity when she drove her police vehicle through an intersection—having no idea that she had a red light—on her way to pick up a co-worker because she planned, after that, to stop by a police event to which

she had neither been assigned nor instructed to go. The City argued she held official immunity, and the trial court granted the City's summary-judgment motion, ruling that the City established its affirmative defense.

In four issues, the other vehicle's driver, Elmer Rivera, and his passengers, Kassandra Morales Rodriguez and Israel Morales, (collectively, Rivera) contend that (1) they raised a genuine issue of material fact to defeat the City's summary-judgment motion on immunity, (2-3) the trial court abused its discretion on two evidentiary rulings related to the parties' summary-judgment evidence, and (4) the trial court abused its discretion in denying their motion to continue the summary-judgment hearing, given that they did not get the chance to depose the two officers whose affidavits the City relied on in support of its summary-judgment motion. As explained below, we conclude that Rivera raised a fact issue on the officer's official immunity, which requires a reversal unless the ruling was correct on other grounds.

The City argues it was. It contends that the summary-judgment should have been granted on its alternative theory that the emergency exception to governmental-immunity waiver applied and the trial court erred when it denied the summary-judgment motion on that separate ground. Because the trial court did not err in denying summary judgment on that ground, we overrule the City's sole appellate issue.

We reverse.

## Background

At around midnight, Officer V. Romero was driving outside of her regular patrol area on her way to the Beechnut Station to pick up her partner. After picking up her partner, she planned to go to a non-emergency priority-three call on an auto theft. While on her way to the Beechnut Station, she heard a radio announcement of an emergency priority-two call involving a suspect with a weapon. At the time, Romero was 10 to 15 minutes from that location, which was in her regular patrol area. Romero was not assigned to the priority-two call. She was not asked to back that call up either.

Priority-two calls are emergency calls. The standard response to such a call, according to Lieutenant C. Chen, who supervises patrol officers, is to "run silent without emergency lights and siren" with a response time of "under five minutes." But if the situation "clearly warrants" the use of emergency equipment (meaning lights and a siren), then an officer has the discretion to use that mode."

Even through Romero was 10 or more minutes away, had not been assigned to the call, and planned to pick up her partner before doing anything else, Romero decided to "check by" the priority-two call after going to the Beechnut Station. At that point, before getting to the Beechnut Station, she engaged her emergency equipment as she drove to pick up her partner.

Recognizing that the law permits police officers who are responding to an emergency to violate certain traffic laws,[1] Romero reached the first intersection after turning on her emergency equipment, noted that her light was red, "came to a complete stop to ensure the intersection was clear," saw that the other vehicles were yielding her the right of way even though she had the red light, and drove through that intersection.

She quickly approached the next intersection. There, she slowed down as she approached the intersection but did not stop. As she was typing a message to the dispatcher on her mobile data terminal (MDT) device about checking by the priority-two call later, she entered that intersection. Romero later admitted she had no idea whether her light was red or green when she entered the intersection typing on her MDT. As she entered the intersection, her police car struck another car that was traveling along the intersecting roadway. The undisputed summary-judgment evidence is that Romero, in fact, had a red light, even though she was not aware she did, and that the other driver, Elmer Rivera, had a green light.

In December 2018, Rivera and his passengers sued Officer Romero and the City of Houston for damages for injuries suffered in the wreck. The next month, the

---

[1] *See* TEX. TRANSP. CODE § 545.151(a)(1)(A) (requiring a motorist to stop at an official traffic-control device); *id.* § 546.001(2) (authorizing police officers to "proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation").

City answered and moved to dismiss Officer Romero from the suit under the Texas Tort Claims Act, leaving just the City as the defendant. The motion was fully briefed by both sides and set for hearing in February 2019. The trial court granted the motion that month.

Two months later, the City filed a motion for summary judgment on two immunity grounds: (1) official immunity for Romero's actions and (2) the emergency exception to the Tort Claims Act's governmental immunity waiver provision. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1) (official immunity); *id.* § 101.055(2) (emergency exception). In support of its motion, the City attached the affidavits of Officer Romero and her supervisor, Lieutenant Chen. The motion was set for May 2019.

Rivera responded in several ways. First, he moved to compel the City to respond to pending discovery and to strike various objections the City had raised to his discovery requests. That motion was set to be heard in May 2019. Second, he filed a verified motion to continue the summary-judgment hearing, arguing that discovery was not complete and depositions still needed to be taken. Romero had not been deposed yet because the City had not given any dates for her availability. Also, the case had not been set for trial. Third, he noticed Romero's deposition for May 28, 2019.

Before the May 28 deposition date, the trial court denied Rivera's motion to continue the summary-judgment hearing and granted the City's summary-judgment motion.

**Governmental Immunity**

**A.     Standard of Review**

Governmental immunity protects political subdivisions of the State, including municipalities, from suit, unless immunity from suit has been waived. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001). When a governmental unit raises the affirmative defense of governmental immunity through a summary-judgment motion, it must establish the affirmative defense as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Oakbend Med. Ctr. v. Martinez*, 515 S.W.3d 536, 542 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

If the movant conclusively establishes the affirmative defense of immunity, the burden of production shifts to the nonmovant to present evidence sufficient to create a fact issue on at least one element of either the movant's affirmative defense or an exception to that defense. *Oakbend*, 515 S.W.3d at 542; *Zeifman v. Nowlin*, 322 S.W.3d 804, 808 (Tex. App.—Austin 2010, no pet.). If the movant cannot and suit is barred because of a governmental unit's immunity, summary judgment is proper. *Oakbend*, 515 S.W.3d at 542; *See Shives v. State*, 743 S.W.2d 714, 715 (Tex. App.—El Paso 1987, writ denied) ("[A] motion for summary judgment may be

6

based on a showing that the cause of action is barred as a matter of law by the affirmative defense of governmental immunity."); *cf. Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–28 (Tex. 2004) (standard of review for jurisdictional plea based on evidence generally mirrors traditional summary-judgment standard).

**B.  Whether the City established immunity as matter of law based on good-faith performance of a discretionary act**

Rivera sued the City for the actions of its employee, Officer Romero, in causing the car wreck and resulting injuries. Political subdivisions, including municipalities, cannot be held liable for the actions of their employees unless a constitutional provision or statute waives governmental immunity. *Little-Tex Insulation*, 39 S.W.3d at 594. The Texas Tort Claims Act waives governmental immunity in certain circumstances. *Dallas Cty. Mental Health Mental Retardation v. Bossley*, 968 S.W.2d 339, 342–43 (Tex. 1998). One of those involves injuries that result from the governmental employee's use of a vehicle. Section 101.021 of the Act waives a governmental unit's immunity for, among other things, property damage and personal injuries proximately caused by the negligence of an employee acting within her scope of employment if (1) the damage and injuries arise from the operation or use of a motor vehicle and (2) the "employee would be personally liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(1).

The second half of the waiver criteria implicates official immunity because a governmental employee who holds official immunity for her actions or omissions, would not be "personally liable under Texas law." *See DeWitt v. Harris Cty.*, 904 S.W.2d 650, 653 (Tex. 1995) ("If the employee is protected from liability by official immunity, the employee is not personally liable to the claimant and the government retains its sovereign immunity" under § 101.021(1)); *see also Mem'l Villages Police Dep't v. Gustafson*, No. 01-10-00973-CV, 2011 WL 3612309, at *3 (Tex. App.— Houston [1st Dist.] Aug. 18, 2011, no pet.). "A governmental employee is entitled to official immunity: (1) for the performance of discretionary duties; (2) within the scope of the employee's authority; (3) provided the employee acts in good faith." *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000); *see City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994).

## 1. Discretionary duty

Generally, nonemergency driving by a police officer while on official business is not a discretionary duty; it is, instead, a ministerial act that does not entitle an officer to official immunity. *City of Houston v. Hatton*, No. 01-11-01068-CV, 2012 WL 3528003, at *3 (Tex. App.—Houston [1st Dist.] Aug. 16, 2012, pet. denied); *Harris Cty. v. Gibbons*, 150 S.W.3d 877, 886 (Tex. App.—Houston [14th Dist.] 2004, no pet.). But, when the officer's operation of a vehicle involves personal deliberation or the exercise of the officer's professional expertise, decision, or

judgment, then the manner of driving may become a discretionary act. *Hatton*, 2012 WL 3528003, at *3. For example, an officer's manner of driving, including violating certain traffic laws, when the officer is trying to quickly reach the scene of suspected criminal activity and assist another officer has been held to be a discretionary act. *See Harless v. Niles*, 100 S.W.3d 390, 398 (Tex. App.—San Antonio 2002, no pet.).

### 2. Good faith

If the officer's driving qualifies as the performance of a discretionary act, the officer still must act in good faith to qualify for official immunity. *See Clark*, 38 S.W.3d at 580. We measure the "good faith" requirement against a standard of objective legal reasonableness, without regard to the officer's subjective state of mind. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997).

Because official immunity is part of the City's affirmative defense of governmental immunity raised in its motion for summary judgment, the City had the burden to prove that a reasonably prudent police officer, under the same or similar circumstances, "could have believed his actions were justified based on the information he possessed at the time." *Gomez v. City of Houston*, 587 S.W.3d 891, 897 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (citing *Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002)).

This "could have believed" evaluation does not raise a question of unreasonableness. Rather, it is a test of good faith analogous to an abuse-of-

discretion standard that protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Texas Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 643 (Tex. 2015) (per curiam) (internal quotation marks omitted). In other words, the City need not prove it would have been unreasonable not to take the actions that Officer Romero took or that a reasonable officer would have taken the same actions as her; instead, it is enough to prove that a reasonable officer under the same or similar circumstances *might* have reached the same decision she did. *Id.*; *Tex. Dep't of Pub. Safety v. Rodriguez*, 344 S.W.3d 483, 491 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

The evaluation of good faith compares the need to act against the risks of the officer's actions based on the facts at the time. *Wadewitz*, 951 S.W.2d at 467. Need, in the context of an emergency response, is evaluated based on factors such as (1) the seriousness of the crime or accident the officer is responding to, (2) the need for the officer's immediate presence to prevent injury or loss of life or to apprehend a suspect, and (3) the availability of alternative courses of action, if any, to achieve a comparable result. *Id.*

Risk evaluates countervailing public-safety concerns by examining (1) the nature and severity of harm that the officer's actions could cause, including injuries to bystanders as well as the possibility that a vehicle accident might prevent the officer from reaching the scene of the emergency that drew the action, (2) the

10

likelihood that harm would occur, and (3) whether any risk of harm would be clear to a reasonably prudent officer based on the officer's perception of the facts at the time. *See id.*; *Gomez*, 587 S.W.3d at 898.

If the City meets this "good faith" summary-judgment burden, then, to raise a fact issue to defeat summary judgment, Rivera must offer evidence that *no* reasonable officer in Romero's position *could have* believed that the facts justified her conduct. *Gomez*, 587 S.W.3d at 898.

### 3. The City did not establish these elements conclusively

In support of its summary-judgment motion and to conclusively establish official immunity, the City relies on the affidavits of Officer Romero and Lieutenant C. Chen, who was Officer Romero's supervisor on the day of the wreck. The City argues that these affidavits establish that Officer Romero was performing a discretionary act and acting in good faith at the time of the wreck. In doing so, the City focuses on the fact that Romero had engaged her emergency equipment consistent with responding to an emergency because Romero intended to "check by" the priority-two call after picking up her partner. And the City focuses on Officer Romero's explanation that it was reasonable for her to type on her MDT as she drove through the intersection where the collision occurred because she wanted to let the radio operator know that she intended to check by the priority-two call and her "preference is to enter that information into the MDT, rather than reporting via the

radio to leave the air open in case the officer needs assistance." Her supervisor agreed that her actions were reasonable.

But other evidence called into question the reasonableness of these actions. First, Lieutenant Chen claimed that the standard response to a priority-two call is to "run silent without emergency light and siren" but an officer "has discretion to use that mode" if the situation "clearly warrants the use of emergency equipment." There is no summary-judgment evidence that this situation warranted emergency equipment. While Romero claimed that typically "two units respond" to such a call "unless the primary unit is a two-man unit," making her decision to check by the unassigned call align with police department practices, there is no summary-judgment evidence that the unit assigned to the call was a one-man unit for which another unit would be warranted. This is thus no evidence that the standard practice for this call was for her unit to go as well. Moreover, Lieutenant Chen claimed that the standard response to a priority-two call is "under five minutes." Romero, who was not assigned to the call, claimed that she was 10-15 minutes away and still planned to pick up her partner before going to the call.

Even if we were to assume that,

—the City established that Officer Romero's decision to "check by" a call that was more than 10 minutes away, with no evidence the call met the criteria for her unit's participation, and for which she had not been assigned to appear was a discretionary act,

12

—the City established that choosing to check by a priority-two call that was not within 5 minutes of her location and to use emergency equipment to do so—even though Romero was 10-15 minutes away and planned to go pick up her partner from the Beechnut Station before going there—was "clearly warrant[ed]," and

—the City established that Romero's actions in typing on her MDT while driving through an intersection against a red light could be considered a good faith action,

we still must conclude that no reasonable officer could have concluded it was reasonable to do these things without first confirming that the light was green or, at a minimum, having some idea whether it was red.

Neither of the affidavits the City relies on addresses or acknowledges what the summary-judgment evidence establishes: Officer Romero entered the intersection having no idea whether she had a red light or green light. Rivera submitted the Texas Peace Officer's Crash Report for the wreck as summary-judgment evidence. The report contains the verbatim text of Officer Romero's written statement, which included the concession: "I didn't realize I had the red light at the intersection at S. Braeswood."

That Romero did not know the status of the traffic light as she entered an intersection is dispositive: it is not objectively reasonable to drive into an intersection, while actively typing on a machine, without having any idea that the traffic light controlling traffic from that direction was red, meaning there could be cross-traffic entering the intersection on a green light. Because Romero did not know

13

whether she had a red light when she entered that intersection typing on her MDT, she could not properly evaluate the risks of her actions against any need to check by the priority-two call, thereby taking her actions outside the realm of a good-faith performance of a discretionary act. *See Jarpe v. City of Lubbock*, No. 07-17-00316-CV, 2019 WL 2529670, at *5–6 (Tex. App.—Amarillo June 19, 2019, pet. denied) (rendering judgment against City on immunity claim, concluding no reasonably prudent officer could have determined it reasonable to speed to a call to which the officer was not assigned, at night, without emergency equipment activated, and while looking down at the MDT instead of the road and other vehicles in the vicinity); *Gomez*, 587 S.W.3d at 899 (holding that city failed to establish good faith where affidavits discussed good faith under assumed facts and provided no evidence of good faith under version of facts most favorable to nonmovant); *Rodriguez*, 344 S.W.3d at 497 (concluding officer and lieutenant's affidavits did not establish good faith in driving through red light).

Because Rivera raised a fact issue on official immunity,[2] we sustain Rivera's first issue.

---

[2] The City argues that Rivera is unable to raise a fact issue without expert evidence, citing *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466–67 (Tex. 1997) and *Harris Cty. v. Avila*, No. 14-18-00182-CV, 2019 WL 1030332, at *6 (Tex. App.—Houston [14th Dist.] Mar. 5, 2019, no pet.). Neither case supports the City's position. Neither case addresses whether, much less holds that, expert testimony is required to raise a fact issue on official immunity. *See Wadewitz*, 951 S.W.3d at 467 (concluding that the expert testimony offered on the subject of good faith was conclusory and

14

**C. The evidentiary rulings and the continuance ruling are moot**

In his remaining three issues, Rivera challenges two evidentiary rulings on the summary-judgment evidence and another ruling to deny a continuance of the summary-judgment hearing. We conclude that all three of these issues are mooted by our holding that the trial court erred in granting the summary-judgment motion, which returns this case to the trial court's docket for additional proceedings and evidentiary development.

**D. Whether the City established immunity as matter of law based on the emergency exception to immunity waiver**

The City contends that, even if the trial court erred in granting it summary judgment on official immunity arising out of a good-faith performance of a discretionary act, the summary judgment may still be upheld on the alternative theory that the emergency exception to immunity waiver applies here. The trial court explicitly rejected this argument, and we do as well.

Under the emergency exception, the Texas Tort Claims Act's immunity waiver will not apply to a claim arising from "the action of an employee while responding to an emergency call or reacting to an emergency situation if [1] the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if [2] the action is not taken with

therefore no evidence); *Avila*, 2019 WL 1030332, at *7 (stating that Avila "failed to present any controverting proof," not simply expert opinion testimony).

15

conscious indifference or reckless disregard for the safety of others . . . ." TEX. CIV. PRAC. & REM. CODE § 101.055(2).

The laws on operating an emergency vehicle are in the Transportation Code. *See* TEX. TRANSP. CODE §§ 546.001–.006; *Perez v. Webb County*, 511 S.W.3d 233, 236 (Tex. App.—San Antonio 2015, pet. denied). Section 546.005 provides that an emergency vehicle driver must drive "with appropriate regard for the safety of all persons" and is not relieved of the "consequences of reckless disregard for the safety of others." *Id.* § 546.005. A person commits the offense of reckless driving if "the person drives a vehicle in willful or wanton disregard for the safety of persons or property." *Id.* § 545.401(a). A violation of this provision requires a showing that the driver committed an act he knew or should have known posed a high degree of risk of serious injury. *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 99 (Tex. App.— Houston [1st Dist.] 2008, no pet.); *Perez*, 511 S.W.3d at 236. This is a recklessness standard. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 n.19 (Tex. 2006) ("conscious indifference" and "reckless disregard" have been interpreted to require proof that a party knew the relevant facts but did not care about the result).

An operator approaching an intersection "shall stop, yield, and grant immediate use of the intersection . . . in obedience to an official traffic-control device." TEX. TRANSP. CODE § 545.151(a)(1)(A). It is permissible for an authorized

16

emergency vehicle to "proceed past a red [light] after slowing as necessary for safe operation." *Id.* § 546.001(2).

The City points to Romero's affidavit in which she states she slowed down before entering the intersection where the wreck occurred. But the statute requires more than that she slow down: it requires "slowing as necessary for safe operation" through the intersection. *See id.*

Here, Romero slowed her vehicle, but she did not look to see if she had a red light to evaluate the risk of proceeding through the intersection. In fact, she had no idea if she had the right of way or if other traffic did, yet she proceeded through the intersection looking—not at the road, but—at her MDT.

Rivera raised an issue of fact about whether Romero acted with reckless disregard for him and other drivers in the area by failing to observe, appreciate, or weigh the risk of entering this intersection against a red light and with her eyes diverted. *See Perez*, 511 S.W.3d at 237.

This Court's holding in *Kuhn* is distinguishable. There, an officer was responding to a house fire emergency. *Kuhn*, 260 S.W.3d at 95. He activated his emergency lights and approached an intersection. *Id.* at 98. He recognized he had a red light, he slowed down or possibly stopped and evaluated whether the intersection appeared clear to cross, and he entered the intersection. *Id.* at 99–100. There was a blind spot at that intersection, the officer did not see another car coming, and the two

collided in the intersection. *Id.* This Court held that there was no evidence of reckless disregard because the officer slowed as necessary and the existence of a blind spot was not determinative. *See id.* at 100–01.

Here, on the other hand, Romero entered the intersection having failed to determine whether she had a red light and she did so while distracted by typing on her MDT. She slowed her vehicle, but she did not slow to the degree necessary to evaluate whether she was traveling against a red light and, based on that information, to evaluate the risks of proceeding through the intersection while typing on her MDT.

The City did not establish a right to summary-judgment on the emergency exception on this evidence, and the trial court was correct to deny the motion on this ground.

We overrule the City's sole issue.

### Conclusion

We reverse and remand for additional proceedings.

Sarah Beth Landau
Justice

Panel consists of Justices Keyes, Lloyd, and Landau.

18