**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00184-CV**
_____

**MIREYDA GONZALEZ AND JOEL GONZALEZ, Appellants**

**V.**

**CITY OF VIDOR, Appellee**

_____

**On Appeal from the 163rd District Court**
**Orange County, Texas**
**Trial Cause No. 230257-C**
_____

**MEMORANDUM OPINION**

Appellants Mireyda Gonzalez and Joel Gonzalez ("Plaintiffs" or collectively "the Gonzalezes") complain the trial court erred by granting appellee City of Vidor's ("the City") plea to the jurisdiction because the trial court has jurisdiction under the Texas Tort Claims Act ("TTCA") due to the City's failure to meet its burden to show the emergency exception applied. According to the Gonzalezes, the TTCA waives sovereign immunity for claims involving personal injury caused by the City's

1

employee's negligent operation or use of a motor-driven vehicle if the employee would be liable under Texas law, or in circumstances where the employee's conduct demonstrated a lack of due regard for the safety of others and/or conscious indifference or reckless disregard for the safety of others. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(1), 101.055(2). For the reasons explained below, we affirm the trial court's Order granting the City's Amended Plea to the Jurisdiction.

## BACKGROUND

The Gonzalezes filed suit against the City alleging they sustained serious personal injuries and damages based on the negligence of Officer Gregory Harbison ("Harbison"), an employee of the City who was acting in the course and scope of his employment. The Gonzalezes alleged that while operating a City vehicle, Harbison turned unsafely into the lane they were traveling in and caused Mireyda Gonzalez ("Mireyda") to take evasive action, which led to her striking a utility pole. The Gonzalezes alleged causes of action against the City for direct negligence and also claimed the City was vicariously liable for Harbison's negligent acts which included, among others, failing to: keep a proper lookout; take proper evasive actions; yield the right of way; make a proper turn from the proper lane; and exercise due care and diligence in operating the vehicle.

The City filed a First Amended Answer asserting a general denial of the allegations and affirmative defenses, including, among others, governmental

2

immunity under the TTCA. The City filed a Plea to the Jurisdiction arguing that it was protected by governmental immunity because there is no statutory waiver under the TTCA or any other statutory or constitutional provision based on the alleged facts of the case. The City argued that the Gonzalezes' direct liability claims do not fall within the waiver of section 101.021 of the TTCA, and the Gonzalezes' vicarious liability claims fail because the City is entitled to governmental immunity under section 101.055(2) of the TTCA, which concerns the emergency exception. *See id.* The City argued that it could not be disputed that Harbison was responding to an emergency call.

The City maintained that the Gonzalezes failed to raise a fact issue that Harbison's pursuit either (1) violated the laws and ordinances applicable to an emergency action, or (2) was reckless. *See id.* § 101.055(2). The City argued that Harbison's violation of the City's internal policy requiring the use of a siren is not a violation of laws and ordinances applicable to emergency action, and that failing to activate the siren and exercise due care does not establish reckless disregard for the safety of others. *See City of Hous. v. Green*, 672 S.W.3d 27, 31 (Tex. 2023); *City of San Antonio v. Maspero*, 640 S.W.3d 523, 530 (Tex. 2022) (citations omitted). The City noted that the evidence that Harbison slowed down and allowed a truck to pass before he tried to cross the service road lanes of traffic shows Harbison engaged in some degree of risk assessment and demonstrated an intent to minimize potential

3

harm. The City argued that the evidence failed to show that Harbison knew he was creating a risk of serious injury and did not care what might happen to other motorists. The City maintained that the Gonzalezes' suit must be dismissed for lack of subject matter jurisdiction because they failed to establish a waiver of the City's governmental immunity from suit and liability.

The City explained that the undisputed material facts come mainly from Harbison's affidavit and dash cam video. In his affidavit, Harbison explained that on the day the Plaintiffs struck a utility pole, he was responding to a "'Priority One'" service call, which is considered an emergency. The call involved an officer needing assistance due to a subject actively resisting arrest. Harbison explained he "did not have my siren activated because I decided the audible signal may increase the potential for a collision as I travel[]ed in the outside lane of Interstate 10 westbound and partially on the shoulder." Harbison stated that upon exiting, he "planned to cross two lanes of service road traffic, hop the curb, and counter flow in the grassy area south of the westbound service road." Harbison "thought [he] stopped, but may have only slowed down[,]" and allowed a truck to pass him. At that point, he "visually cleared the roadway and did not see any oncoming traffic, and, as [he] cautiously crossed the two lanes of the service road traffic, Plaintiffs' black Cadillac Escalade veered off the roadway to the right and struck a utility pole." Harbison explained that he reviewed his dash cam video and that it "accurately depicts the

4

facts surrounding this incident." The dash cam video supports Harbison's affidavit as it shows he stopped or almost stopped before he allowed a truck to pass, crossed the two lanes of the service road, and then saw the Gonzalezes veer off the road. The dash cam video does not show whether Harbison had a blind spot to his right, which is the direction the Gonzalezes were traveling from, as the video depicted only what was directly in front of Harbison's vehicle, and the video shows that Harbison could see directly across the feeder road.

The Gonzalezes amended their Original Petition, and in their Second Amended Petition, they eliminated any direct negligence claims against the City and proceeded on their vicarious liability claims involving Harbison. The City filed an Amended Plea to the Jurisdiction reiterating its argument that it was entitled to governmental immunity under section 101.055(2) of the TTCA, which concerns the emergency exception. The City argued that the Gonzalezes' Second Amended Petition does not allege facts or evidence establishing a waiver of its governmental immunity or negating the applicability of section 101.055(2). The City maintained that it cannot be disputed that Harbison was responding to an emergency, and the Gonzalezes cannot establish that Harbison's pursuit violated the laws and ordinances applicable to emergency action or was reckless.

The Gonzalezes filed a Response to the City's Plea, arguing that the evidence demonstrates or creates a fact issue that Harbison acted with conscious indifference

5

or reckless disregard for the safety of others when he attempted to drive blindly across both lanes of the feeder road and directly into the path of Gonzalezes' oncoming vehicle. The Gonzalezes argued that the trial court has jurisdiction under sections 101.021 and 101.055(2) of the TTCA. The Gonzalezes maintained there is ample evidence that creates a fact issue as to whether Harbison acted with conscious indifference or reckless disregard for the safety of others. The Gonzalezes alleged there was sufficient evidence to preclude the application of the emergency exception because the dash cam video shows Harbison knew he had a blind spot, knew the danger because he let a truck pass, and realized his recklessness caused an accident. The Gonzalezes asked the trial court to deny the City's Plea.

The Gonzalezes attached the Crash Report from the accident, which stated that a marked police unit with its emergency lights activated with no siren turned when unsafe into the left lane of the Interstate 10 west service road with the intent to go east on the west service road while responding to an emergency call for service. The Crash Report stated that while turning to the right, the patrol unit caused the Cadillac Escalade to skid to the right from the left lane and cross over the right lane and into a utility pole.

The City filed a Reply to the Gonzalezes' Response and maintained its argument that the Gonzalezes failed to negate section 101.055's applicability because the undisputed evidence shows Harbison was responding to an emergency

6

call or reacting to an emergency situation and because the law entitled him to disregard a regulation governing the direction of movement or turning in specified directions when operating an authorized emergency vehicle and responding to an emergency call. *See* Tex. Transp. Code Ann. § 546.001(4); *see also id.* § 546.002(b)(1). The City argued that sections 545.060 and 545.152 of the Transportation Code do not apply to emergency operations, and even if they did, the Gonzalezes cannot establish that Harbison's actions were taken with "conscious indifference or reckless disregard for the safety of others." *See id.* §§ 545.060(a)(2) (providing that an operator on a roadway divided into two or more clearly marked lanes may not move from the lane unless the movement can be made safely), 545.152 (providing that to turn left at an intersection an operator shall yield the right-of-way to a vehicle approaching from the opposite direction or in such proximity to be an immediate hazard); Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2).

The Gonzalezes filed a Response to the City's Amended Plea, arguing that the emergency exception does not provide the City with immunity from suit because Harbison failed to use both his lights and siren as required by the City's policy, and that there was a causal nexus between Harbison's failure to use both his lights and siren and the accident. *See* Tex. Transp. Code Ann. § 546.003. The Gonzalezes noted that while sections 546.001 and 546.002 of the Transportation Code allow an operator of an emergency vehicle who is responding to an emergency call to

disregard a regulation governing the direction of movement or turning in specified directions, section 546.003 requires officers to employ lights and the siren consistent with department policy while driving in a way that would violate those laws. *See id.* §§ 546.001(4), 546.002(b)(1), 546.003. The Gonzalezes maintained that section 101.055(2) focuses on whether the operator's conduct was in conscious indifference or reckless disregard to the safety of others if there are no applicable laws or ordinances, which is not the case here. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). The Gonzalezes argued that the City's focus on section 546.005, which states the operator of an authorized emergency vehicle is not relieved of his duty of care, was improper and that there was a fact issue as to whether Harbison's "blindly driving in front of oncoming traffic was in conscious indifference or reckless disregard of Plaintiffs' safety." *See* Tex. Transp. Code Ann. § 546.005.

The Gonzalezes attached excerpts from Harbison's deposition to their Response and noted that Harbison testified that before the accident he violated the City's siren policy, which required him to activate his lights and siren when responding to an emergency. Harbison testified that he was disciplined for violating the siren policy and that his violation could have increased the risk of an accident if someone could not see him. Harbison agreed that turning across oncoming traffic could be a dangerous situation and that it would have been safer to have his siren on

8

if the Plaintiffs could not see him. Harbison stated that not having his siren on could have affected whether the accident occurred.

The Gonzalezes also attached Mireyda's affidavit and argued that her affidavit created a fact issue as to whether there was a causal nexus between Harbison's failure to activate both his lights and siren and the accident. In Mireyda's affidavit, she explained she did not hear any audible signal before Harbison drove into her lane nor did she see his active lights in time to slow down and take evasive action to avoid hitting the pole. Mireyda stated that, if she had heard Harbison's siren, she would have slowed down even if she did not immediately see him and would have taken extra precautions to avoid the accident. Mireyda stated that Harbison's failure to use his siren caused her to be unable to timely take evasive action.

The trial court conducted a hearing on the City's Amended Plea and considered the parties' arguments about whether Harbison's actions complied with the law and ordinances applicable to an emergency action and whether Harbison acted with conscious indifference or reckless disregard for the safety of others. The trial court considered Harbison's failure to use both his visual and audible signals. The City argued that section 546.004(c) of the Transportation Code, which includes exceptions to signal requirements, provides that Harbison may operate his vehicle without using his audible or visual signal as required by section 546.003 if he is responding to an emergency call and believes that vehicles responding to audible or

9

visual signals may increase the potential for a collision. *See id.* §§ 546.003, 546.004(c)(1)(B)(i). The City argued that Harbison complied with section 546.003 by using his discretion to only operate his visual signal. The City maintained that the *Maspero* and *Green* cases support its argument that Harbison's failure to use his siren does not foreclose the application of the emergency exception. *See Green*, 672 S.W.3d at 31; *Maspero*, 640 S.W.3d at 530. The City stated that Harbison explained in his affidavit and deposition why he chose not to activate his siren and that he thought he had cleared the intersection before proceeding to cross the feeder road, where plaintiffs' vehicle came into view. The City argued that Harbison's dash cam video shows he did not act recklessly or with conscious disregard when he tried to cross the intersection but used due care.

The Gonzalezes argued that there was a causal nexus between Harbison's conduct and the accident because Harbison was disciplined for violating the City's policy requiring officers to activate both lights and sirens in emergency situations. The Gonzalezes maintained that Harbison's failure to use a siren was a contributing factor to the accident. The Gonzalezes argued that the City's governmental immunity was waived due to Harbison's failure to comply with the laws and ordinances applicable to the emergency situation. The Gonzalezes also argued that the dash cam video shows that Harbison could not see across the entire feeder road and that he crossed the road despite there being a blind spot, which shows that he knew or should

10

have known that his actions posed a high degree of risk or serious injury but did not care about the result. The Gonzalezes maintained that Harbison's actions raised fact issues as to whether he acted with conscious indifference or reckless disregard for the safety of others.

The trial court signed an Order granting the City's Amended Plea and dismissing the Gonzalezes' Second Amended Petition with prejudice. During the hearing, the trial court noted that while it believed Harbison was reckless, it "believe[d] that the cases that have been cited state that it does not rise to the standard that the appellate courts are requiring to comply with that statute."

## ANALYSIS

In their sole issue, the Gonzalezes complain the trial court erred by granting appellee City's Amended Plea because the trial has jurisdiction under the TTCA because fact issues existed as to whether the emergency exception applied. According to the Gonzalezes, the TTCA waives sovereign immunity for claims involving personal injury caused by Harbison's negligent operation or use of a motor-driven vehicle if Harbison would be liable under Texas law, or in circumstances where Harbison's conduct demonstrated a lack of due regard for the safety of others and/or conscious indifference or reckless disregard for the safety of others. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(1)(A), 101.055(2). The Gonzalezes argue that the evidence created fact issues on the application of the

11

emergency exception and whether Harbison was reckless. According to the Gonzalezes, since there is no dispute that Harbison did not have his siren on and failed to use both his lights and siren in violation of the City's policy, Harbison failed to comply with the law and ordinances applicable to emergency action. *See* Tex. Transp. Code Ann. § 546.003; *see also id.* §§ 546.001(4), 546.002(b)(1); Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); *City of San Antonio v. Trevino*, No. 04-22-00224-CV, 2022 WL 17480550, at **7-8 (Tex. App.—San Antonio Dec. 7, 2022, no pet.) (mem. op.).

A plea to the jurisdiction is a dilatory plea, which governmental entities may use to challenge a court's power to resolve the merits of a plaintiff's claims. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). In a suit against a governmental unit, we assume the truth of all jurisdictional facts alleged in the pleadings unless the defendant presents evidence to negate their existence. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004). If a plea challenges the jurisdictional facts, we must consider relevant evidence submitted by the parties to resolve the jurisdictional issues raised. *See City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009). If the relevant evidence is undisputed or fails to raise a fact question, the trial court rules on the plea as a matter of law, but if that evidence creates a fact issue, then the fact issue will be resolved by a jury. *See id.*

After a defendant presents evidence that the trial court lacked jurisdiction, the plaintiff must show that there is a disputed material fact regarding jurisdiction when the facts underlying the merits and subject matter jurisdiction are intertwined. *Miranda*, 133 S.W.3d at 228. This standard generally mirrors the summary judgment standard under Rule 166a(c) of the Texas Rules of Civil Procedure. *Id.*; *see also* Tex. R. Civ. P. 166a(c). In reviewing a plea in which the pleading requirement has been met and evidence supporting the plea implicated the merits of the case, we take as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor. *Miranda*, 133 S.W.3d at 228.

As a municipality and political subdivision of the State, the City cannot be vicariously liable for an employee's acts unless its governmental immunity has been waived. *City of Austin v. Powell*, 704 S.W.3d 437, 448 (Tex. 2024); *City of Hous. v. Rodriguez*, 704 S.W.3d 462, 467 (Tex. 2024). The TTCA waives immunity of governmental units like the City when the negligence of an employee acting within the scope of his employment proximately causes personal injury arising from operation or use of a motor-driven vehicle, and if the employee would be personally liable to the claimant according to Texas law. Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1). In addition to waiving a governmental unit's immunity from liability, section 101.021(1) also waives immunity from suit. *Id.* § 101.025(a); *Tex. Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001).

There is an emergency use exception to the statutory waiver of sovereign immunity for torts involving the government's use of a motor vehicle. Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); *see id.* § 101.021(1). As here, if an injury arises from an officer's response to an emergency call, the TTCA waives immunity for certain torts, but it "withdraws" the waiver in some situations. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 866 (Tex. 2023). When an injury arises from an officer's response to an emergency call, the TTCA withdraws the waiver of immunity unless (1) the officer did not comply with "the laws and ordinances applicable to emergency action," or (2) in the absence of such laws, the officer acted "with conscious indifference or reckless disregard for the safety of others." Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); *see Maspero*, 640 S.W.3d at 529. The plaintiffs bear the burden of negating the applicability of section 101.055. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006).

### *Did Harbison fail to comply with the law and ordinances applicable to emergency action?*

Here, the Gonzalezes argue that Harbison's pursuit violated applicable laws and ordinances and that Harbison acted with reckless disregard for the safety of others. *See Maspero*, 640 S.W.3d at 529; *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). The Gonzalezes contend that Harbison violated the City's policy, which required him to use both his lights and siren during the pursuit. The Gonzalezes argue that by violating the City's policy, Harbison also violated Section 546.003 of

14

the Transportation Code, which states that "the operator of an authorized emergency vehicle engaging in conduct permitted by Section 546.001 shall use, at the discretion of the operator in accordance with policies of the department or the local government that employs the operator, audible or visual signals." Tex. Transp. Code Ann. § 546.003; *see also id.* § 546.001(4) (stating that while operating an authorized emergency vehicle, the operator may disregard a regulation governing the direction of movement or turning in specified directions). The Gonzalezes argue that the evidence shows Harbison did not have his siren on during the pursuit and that he did not have discretion in using either option because the City's policy required both.

In *Maspero*, the Texas Supreme Court held that a police department's internal policies are not "'laws' or 'ordinances[]'" for purposes of waiver of immunity under Section 101.055(2) of the TTCA. 640 S.W.3d at 530 (citations omitted). Thus, Harbison's noncompliance with the City's policy does not by itself amount to a violation of "laws and ordinances applicable to emergency action[.]" *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); *Maspero*, 640 S.W.3d at 530.

The Gonzalezes also argue that Harbison's failure to comply with the City's policy amounts to a statutory violation of section 546.003. Tex. Transp. Code Ann. § 546.003. The City contends that the Gonzalezes, who have the burden to identify any regulation that Harbison disregarded, failed to identify which activity covered by section 546.001 occurred at the time of the accident. The permissible conduct

15

allowed by section 546.001 when operating an authorized emergency vehicle includes: parking or standing irrespective of another provision; proceeding past a red or stop signal or stop sign after slowing; exceeding a maximum speed limit; and disregarding a regulation governing the direction of movement or turning in specified directions. *See id.* § 546.001. In their brief, the Gonzalezes state that the City argued that while responding to an emergency call, Harbison was authorized by section 546.001 to turn in front of them and disregard the movement of westbound traffic, which included the Gonzalezes, on the feeder road. *See id.* § 546.001(4). The Gonzalezes argue that "[w]hen read together, sections 546.001 and 546.003 require officers to employ siren and lights, 'consistent with department policy, when driving in a way that would violate those laws.'"

The City argues the evidence shows Harbison was not running fast with his lights on when the accident occurred but had already left the highway and came to a momentary stop before cautiously moving forward across the lanes of the service road. According to the City, Harbison's explanation about why he used his discretion to not use his siren at the same time as his emergency lights establishes that section 546.004 excuses his failure to use his siren on the highway as required by section 546.003. *See id.* §§ 546.003, 546.004(c)(1)(B)(i). Section 546.004 states that an officer may operate an emergency vehicle for a law enforcement purpose without using the audible or visual signals required by section 546.003 if, when responding

16

to an emergency call, the officer believes that because of traffic conditions on a multilane roadway, vehicles in responding to the audible signal may increase the potential for a collision. *See id.* § 546.004(c)(1)(B)(i).

The City's written policy was not admitted into evidence, but Harbison testified that when responding to an emergency call, the City's policy required him to use his siren when he was running fast with lights on. Harbison stated in his affidavit that when he briefly traveled west on the Interstate 10 service road and took the first exit, he activated his emergency lights but not his siren because he decided the audible signal may increase the potential for a collision as he traveled in the outside lane of the Interstate 10 westbound and partially on the shoulder. Harbison stated after he exited the highway, he thought he stopped, but may have only slowed down, for a pickup to pass him, and after he visually cleared the roadway and did not see any vehicles, he cautiously crossed the two lanes of the service road traffic when he saw the Gonzalezes veer off the roadway. Harbison's testimony about why he chose not to activate his siren was consistent with his affidavit. Harbison testified that in his experience, when he turns on his lights and siren and runs up on somebody, they pull to the right, which is where he needed to be.

Our review of the record shows the City presented evidence that section 546.004's exception applied, which allowed Harbison to operate his emergency vehicle while responding to an emergency call without using the audible signal as

17

required by section 546.003, because he believed the traffic conditions on the highway might have increased the potential for a collision. *See id.* Since an exception applied, Harbison did not violate section 546.003 and thus did not fail to comply with the law and ordinances applicable to emergency action. *See id.* § 546.003; Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2).

We also note that the *Maspero* Court held that "Section 546.003 applies to officers while 'engaging in conduct permitted by section 546.001,' not while engaging in pursuit of a fleeing suspect[,]" and that "[r]eading these provisions together, they require officers to employ sirens, consistent with department policy, when they are driving in a way that would violate those laws." *Maspero*, 640 S.W.3d at 530-31. The *Maspero* Court explained that the evidence that the officer failed to use her siren did not foreclose the TTCA's emergency exception where there was no causal nexus between the plaintiff's claim and the officer's alleged reckless or illegal action, and that the emergency exception applies unless a fact issue exists as to whether the officer acted with "'conscious indifference or reckless disregard for the safety of others.'" *Id.* at 531 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2)). The *Maspero* Court explained that the officer's use of her siren was inconsequential for purposes of section 101.055, which requires a causal nexus between the plaintiff's claim and the officer's reckless or illegal action, because the plaintiff failed to explain how their injuries arose from the officer failing to use her

18

siren. *Id.* The *Maspero* Court held that any suggestion that the siren would have prevented the collision, even given the officer's extreme recklessness, is speculation at best and that the emergency exception applies unless a fact issue exists as to whether the officer acted "'with conscious indifference or reckless disregard for the safety of others.'" *Id.*

Here, Mireyda explained in her affidavit that she did not hear any audible signal before Harbison drove into her lane. Mireyda also explained that she did not see Harbison's active lights in time to slow down and take evasive action to avoid hitting the pole. Mireyda stated that, if she had heard Harbison's siren, she would have slowed down even if she did not immediately see him in order to take extra precaution to avoid the accident. Mireyda stated that Harbison's failure to use his siren caused her to be unable to timely take evasive action. As in *Maspero*, we hold that Mireyda's statement that the siren would have prevented the collision is speculation at best. *See id.*

*Did Harbison act with conscious indifference or
reckless disregard for the safety of others?*

Next, we address whether Harbison acted "with conscious indifference or reckless disregard for the safety of others." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). Section 546.005 of the Transportation Code provides that the operator of an authorized emergency vehicle has the duty to operate the vehicle with appropriate regard for the safety of all persons and is not relieved of the

19

consequences of reckless disregard for the safety of others. Tex. Transp. Code Ann. § 546.005. "The action of an emergency-vehicle operator constitutes a reckless disregard for the safety of others when the operator knows or should have known that the action in question posed a high risk of serious injury to others." *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 700 (Tex. App.—Austin 2005, no pet.).

"[D]riving with 'reckless disregard' involves more than a 'momentary judgment lapse[]'" and "requires a 'willful or wanton disregard for the safety of persons or property,' exhibiting 'conscious indifference' while having 'subjective awareness of an extreme risk.'" *Green*, 672 S.W.3d at 30 (quoting *Maspero*, 640 S.W.3d at 531). "[T]o drive with reckless disregard, the driver must commit 'an act he knew or should have known posed a high degree of risk of serious injury' to others." *Id.* (quoting *Perez v. Webb Cnty.*, 511 S.W.3d 233, 236 (Tex. App.—San Antonio 2015, pet. denied)). In other words, the evidence must support a finding that the officer "'knew the relevant facts' but 'did not care what happened to [other] motorists.'" *Id.* (citation omitted).

The evidence shows Harbison engaged in some degree of risk assessment, as the evidence shows that before he crossed the service lanes of traffic, he either stopped or slowed down to almost a stop, allowed a truck to pass him, visually cleared the roadway, and when he did not see any vehicles, he crossed the two lanes

20

of the service road traffic and then saw the Gonzalezes veer off the roadway. While these facts may show a momentary error of judgment on Harbison's part when he failed to activate his siren before crossing the two lanes of the service road, they do not suggest that his actions generated "extreme risk[]" beyond that which is inherent in an officer's need to quickly respond to an emergency. *See Green*, 672 S.W.3d at 30-31; *Maspero*, 640 S.W.3d at 531. While Harbison conceded in his deposition that using his siren before crossing the road would have been safer, even if Harbison failed to exercise due care at that point, his actions do establish a reckless disregard for the safety of others. *See Green*, 672 S.W.3d at 30; *Maspero*, 640 S.W.3d at 531. Instead, by slowing down to almost a stop and visually clearing the roadway before crossing the two lanes of the service road, Harbison demonstrated his intent to minimize potential harm while responding to the emergency. *See Maspero*, 640 S.W.3d at 531.

There is nothing in the record showing that Harbison knew he was creating a risk of serious injury and did not care what might happen to other motorists. *See Green*, 672 S.W.3d at 31. Thus, we hold that there is no evidence that could support a finding that Harbison acted with reckless disregard for the safety of others. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); *Green*, 672 S.W.3d at 31.

21

## CONCLUSION

We have determined that Harbison's pursuit did not violate applicable laws and ordinances and that Harbison did not act with conscious indifference or reckless disregard for the safety of others. Thus, the emergency exception applies, and the TTCA does not waive the City's governmental immunity. We conclude the trial court did not err in granting the City's Amended Plea. Accordingly, we overrule the Gonzalezes' sole issue and affirm the trial court's Order granting the City's Amended Plea to the Jurisdiction.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on January 2, 2026
Opinion Delivered April 23, 2026

Before Golemon, C.J., Johnson and Wright, JJ.

22